**Robert Lee NORRIS, Petitioner–Appellant,**

v.

**Henry RISLEY, Warden, Respondent–Appellee.**

No. 87–4280.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1989.

Decided June 30, 1989.

Robert Lee Norris, Deer Lodge, Mont., pro per.

Dorothy McCarter, Asst. Atty. Gen., Helena, Mont. for respondent-appellee.

Before PREGERSON, BOOCHEVER and NOONAN, Circuit Judges.

BOOCHEVER, Circuit Judge:

Norris appeals the dismissal, without an evidentiary hearing, of his habeas corpus petition. After a jury trial in a Montana court Norris was convicted of one count of aggravated kidnapping and two counts of sexual intercourse without consent. On appeal the Montana Supreme Court affirmed the conviction. He is presently serving a ninety-year sentence. The parties agree that Norris has met the exhaustion requirement with respect to the claim raised in this petition.

Norris denied having any sexual contact with the complaining witness, and the evidence at trial was in conflict, with some witnesses corroborating his testimony and others corroborating the complaining witness' testimony.

During the pretrial proceedings, twenty to twenty-five women from a "Rape Task Force" were present as spectators, wearing buttons which said "Women Against Rape". After the jury was selected, Norris moved to exclude the women from the courtroom during the trial, or to prevent them from wearing the buttons. The trial court denied the motion:

> Well, I'm compelled to deny your motion, because the public is entitled to attend court proceedings up to the point where the Court is absolutely satisfied that there is some imminent threat involved. And certainly the Rape Task Force ladies and personnel are not known for imminent threat to anybody's life.
>
> . . . .
>
> Well, we do have First Amendment rights that are involved. And I don't feel that I can grant that. As long as it is an expression that is announced peacefully—And certainly a button would do that—I think I have no basis for granting the motion.

Norris alleges that the women were present throughout the trial, that their buttons were two to three inches in diameter, and that the buttons were easily visible to the jurors. He also alleges that the jurors had to pass through the Rape Task Force

members congregated outside the courtroom each day when they left the courtroom. At oral argument, Norris stated that the Rape Task Force members were selling refreshments outside the courtroom on behalf of the state. Finally, he alleges that the father of one of the witnesses, sitting among the Rape Task Force women, created a scene in the courtroom. He contends that the presence and conduct of the spectators deprived him of a fair trial.

The U.S. district court denied his petition without an evidentiary hearing:

> The record indicates that no spectators wearing buttons were in attendance during the trial. There was also no indication in the record as to any outburst or other conduct that supports the fact that petitioner was tried in a hostile community. The Court finds even if spectators wearing buttons were present, this would not entitle petitioner to relief of his conviction. The mere fact that spectators were present in the courtroom wearing buttons is not "inherently prejudicial" as to deny petitioner a fair trial. *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). Furthermore, the Court finds that petitioner has alleged no facts which would show that the presence of the spectators precluded the jury from rendering an impartial verdict based solely on the evidence presented.
>
> The issue of jury prejudice was before the trial judge after the jury was impaneled. At that time, Judge Luedke denied petitioner's motion to exclude those spectators from attending the trial or for wearing their buttons. The determination of a spectator's prejudicial effect upon the jury lies within the sound discretion of the trial judge who by viewing the proceedings is more competent to pass on the issue. *See United States v. Johnson*, 618 F.2d 60 (9th Cir.1980). Therefore, a federal evidentiary hearing is not required on this issue.

We have been unable to find any indication in the record that no spectators wearing buttons were in attendance during trial. It appears that the record is simply silent on this issue.

## STANDARD OF REVIEW

■■■ The District Court's decision to deny a petition for writ of habeas corpus is generally reviewed *de novo*. *Carter v. McCarthy*, 806 F.2d 1373, 1375 (9th Cir. 1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). To the extent it is necessary to review findings of fact, the clearly erroneous standard applies. *Id.* A habeas corpus petitioner is entitled to an evidentiary hearing if he has alleged facts which, if proven, would entitle him to relief and he did not receive a full and fair evidentiary hearing in a state court. *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963); *see Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir.), *cert. denied*, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984).

If the merits of a factual issue were determined in state court, the determination is entitled to a presumption of correctness unless one of the factors listed in 28 U.S.C. section 2254(d) exists, indicating a denial of due process or lack of support in the record for the state court findings. *See Bashor*, 730 F.2d at 1232–33. Thus, if the Montana trial court had determined that the presence of the women with buttons would not deprive the defendant of a fair trial, or had questioned the jurors to determine whether they might be swayed by the presence of the women, or had given precautionary instructions, the trial court's determination might be entitled to deference by the federal courts on a petition for habeas corpus. *See Bashor*, 730 F.2d at 1237–38.

■■ In this case, however, the trial court never made an assessment of the impact that the presence of the women with buttons would have on the fairness of the trial. Instead, he held that as long as the expression was peaceful, i.e. not imminently threatening somebody's *life*, he had no basis for granting the motion to prevent the women from wearing the buttons. This was not the correct legal standard. The court should have determined whether the proposed speech (the buttons) posed a seri-

ous and imminent threat to a *fair trial.* If so, the right to a fair trial outweighs any First Amendment rights at stake. *See generally Levine v. United States District Court,* 764 F.2d 590, 597–98 (9th Cir.1985) (affirming the district court's decision that a prior restraint on speech was justified by a serious and imminent threat to a fair trial). Because the trial court failed to apply the correct legal standard, and thus failed to determine what impact the buttons might have on a fair trial, there is no state court determination to which we can give deference.

■ The question whether the presence of twenty to twenty-five women wearing "Women Against Rape" badges during the criminal trial of a rape suspect would deprive the defendant of a fair trial appears to be a mixed question of fact and law. A mixed question of fact and law is one in which " 'the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " *United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (quoting *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982)).

■ "When … the application of law to fact requires us to make value judgments about the law and its policy underpinnings, and when … the application of law to fact is of clear precedential importance, the policy reasons for de novo review are satisfied and we should not hesitate to review the judge's determination independently." *McConney,* 728 F.2d at 1205. "[T]he concerns of judicial administration will usually favor the appellate court, and most mixed questions will be reviewed independently. This is particularly true when the mixed question involves constitutional rights." *Id.* at 1204.

As in *McConney,* questions of judicial administration and policy suggest that this court should decide *de novo* whether, if

Norris can prove his allegations, he is entitled to a writ of habeas corpus. *See United ed States v. Halliburton,* 870 F.2d 557, 558 (9th Cir.1989) ("Whether a defendant's right to a fair trial is violated because members of the jury observe him in handcuffs is a question of law that is reviewed independently without deference to the district court's determination of this issue.").

## DISCUSSION

A criminal defendant has the right to be tried in an atmosphere undisturbed by public passion. *Irvin v. Dowd,* 366 U.S. 717, 728, 81 S.Ct. 1639, 1645, 6 L.Ed.2d 751 (1961). "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Id.* at 722, 81 S.Ct. at 1642. "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 549–50, 13 L.Ed.2d 424 (1965) (quoting *Irvin,* 366 U.S. at 722, 81 S.Ct. at 1642).

In *Turner* the Supreme Court held that where the deputy sheriffs who were the prosecution's two key witnesses also had charge of the jury throughout the trial, and their credibility would determine whether the defendant would be found guilty, "the potentialities of what went on outside of the courtroom during the three days of the trial may well have made these courtroom proceedings little more than a hollow formality." 379 U.S. at 473, 85 S.Ct. at 550. Thus, it was necessary to reverse the conviction. The Court noted: "Mr. Justice Holmes stated no more than a truism when he observed that 'Any judge who has sat with juries knows that in spite of forms they are extremely likely to be impregnated by the environing atmosphere.' " 379 U.S. at 472, 85 S.Ct. at 549 (quoting *Frank*

*v. Magnum,* 237 U.S. 309, 349, 35 S.Ct. 582, 596, 59 L.Ed. 969 (1915) (dissenting opinion)).

In *Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976), the Court held that a state cannot compel a criminal defendant to wear prison garb during the trial. The Court held that, as when the jury is placed in the charge of deputy sheriffs who were witnesses for the prosecution, when a defendant is tried in prison attire "an unacceptable risk is presented of impermissible factors coming into play." *Williams,* 425 U.S. at 505, 96 S.Ct. at 1693 (citing *Turner, supra* ).

> [C]ourts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.
>
> The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. But this Court has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny. Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience.

*Id.* 425 U.S. at 503–04, 96 S.Ct. at 1692–93 (internal citations omitted).

These principles were recently reaffirmed in *Holbrook v. Flynn,* 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). There, the Court considered whether the presence of four uniformed state troopers in the first row of the spectator section was so inherently prejudicial that it could only be justified by an essential state interest. The Court held that it was not inherently prejudicial, because it was unlikely that the presence of the troopers would be taken as a sign of more than normal concern for the safety and order of the proceedings, given that six defendants were on trial. 475 U.S. at 571, 106 S.Ct. at 1347. "All a federal court may do in such a situation is look at the scene presented to jurors and deter-mine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial...." 475 U.S. at 572, 106 S.Ct. at 1348.

In *United States v. Halliburton,* 870 F.2d 557 (9th Cir.1989), we determined whether a defendant's right to a fair trial was violated when members of the jury observed him in handcuffs outside the courtroom after previously having been aware that he was not in custody. *Id.* at 560. Because the trial court carefully arranged for the defendant to be observed by the jurors during recesses for the remainder of the trial without handcuffs and without marshalls nearby, and because the court gave curative instructions, we concluded beyond a reasonable doubt that Halliburton's right to a fair trial was not violated. *Id.* at 561–62.

Even in instances where particular practices are inherently prejudicial, they are permissible if necessary. Thus, in *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) the Court stated that it would be constitutionally permissible to bind and gag a defendant who refused to cease disruptive behavior in the courtroom.

■ Thus, bearing in mind that jurors are "extremely likely to be impregnated by the environing atmosphere" and being "alert to factors that may undermine the fairness of the fact-finding process" we must determine, based on "reason, principle, and common human experience" whether the circumstances described by Norris, if proven, created an "unacceptable risk of impermissible factors coming into play" and were thus "so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial."

Human experience suggests that in this case the presence of at least twenty women wearing "Women Against Rape" buttons would pose an unacceptable risk to a fair trial. In this particular trial, as in *Turner,* the credibility of the key witness was critical to the jury's determination of guilt. There is an unacceptable risk that the jury's determination of her credibility was influenced by the courtroom showing of support by the Rape Task Force. There is

a similar risk, as Norris argues, that the presence of the women constituted a statement, not subject to cross-examination, that in the opinion of these members of the Rape Task Force the complaining witness had been raped by the defendant.

If Norris' allegations as to the presence of the women are proven, one reasonable inference is that the women's purpose was to be sure that he was convicted. He argues that the presence of the women constituted a "silent community endorsement" of his guilt. Demonstrations in or near courthouses designed to influence the administration of justice are impermissible.

> The constitutional safeguards relating to the integrity of the criminal process attend every stage of a criminal proceeding, starting with arrest and culminating with a trial 'in a courtroom presided over by a judge.' *Rideau v. Louisiana*, 373 U.S. 723, 727 [83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963)]. There can be no doubt that they embrace the fundamental conception of a fair trial, and that they exclude influence or domination by either a hostile or friendly mob. There is no room at any stage of judicial proceedings for such intervention; mob law is the very antithesis of due process.

*Cox v. Louisiana*, 379 U.S. 559, 562, 85 S.Ct. 476, 479-80, 13 L.Ed.2d 487 (1965) (rejecting a facial challenge to state law prohibiting courthouse picketing).

Norris' allegation that at least twenty women wearing the buttons were present at his trial, if proven, would entitle him to relief. Even a lesser number of the women could present an unacceptable risk that Norris' trial was unfair.

In contrast, Norris' argument that the presence of a relative of a witness who was "out of control" denied him a fair trial is meritless. The record shows that this person appeared red and angry and was breathing loudly during the examination of his daughter. Norris moved to exclude him from the courtroom based on the probability that he would "act out in the courtroom in a prejudicial manner in front of the jury." The trial court interviewed him in chambers, and the person informed the judge that he was aware of his own inability to control himself and would thus exclude himself from the rest of the trial. Norris does not allege that the relative returned after the motion was made. Thus, his argument that the conduct of the spectator deprived him of a fair trial is meritless.

We remand to the district court to hold an evidentiary hearing to establish whether the women were present at trial wearing the buttons. If the women were present in some lesser number than that alleged by Norris, the district court should determine whether Norris was denied a fair trial. Relevant factors to be considered would include the number of women, the visibility of the buttons, whether the jurors passed through the women as they entered and exited the courtroom, and whether the women were serving refreshments in view of the jurors, thus giving the apparent imprimatur of the state to the women's presence.

REVERSED AND REMANDED.