952 F.2d 406
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joseph M. CARPINO, Petitioner/Appellant,
v.
Pete DEMOSTHENES, et al., Respondents/Appellees
 No. 90-16196.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 11, 1991.*
Decided Jan. 3, 1992.
 
 1
 Before GOODWIN, NOONAN and ALDISERT,** Circuit Judges.
 
 
 2
 MEMORANDUM***
 
 
 3
 The major question for decision in this appeal from a denial of a writ of habeas corpus is whether the appellant, Joseph M. Carpino, was denied due process because of the lengthy time period between the date of Wayne Rutledge's murder on December 16, 1978, and the date of Carpino's arrest for the murder on December 1, 1986. Carpino also challenges as a violation of his Sixth Amendment right to a speedy trial the ten-and-one-half month delay between the time of his arrest and the beginning of his trial in the Nevada state court on October 19, 1987. He raises additional questions relating to the admission or exclusion of evidence, the form of the indictment, purportedly improper statements by the prosecutor and trial judge, jury instructions and testimony taken at the penalty phase of the trial. We are persuaded that the district court committed no reversible error, and we affirm the judgment.
 
 
 4
 The district court had jurisdiction under 28 U.S.C. § 2254. We have appellate jurisdiction based on 28 U.S.C. § 2253, following the issuance of a certificate of probable cause by this court. The appeal was timely filed under Rule 4(a), F.R.A.P.
 
 
 5
 The denial of a writ of habeas corpus is reviewed de novo. United States v. Angelone, 894 F.2d 1129 (9th Cir.1990). "To the extent it is necessary to review findings of fact, the clearly erroneous standard applies." Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989). In reviewing a district court's grant or denial of a habeas corpus petition, the factual determinations of the state court are entitled to a presumption of correctness. 28 U.S.C. § 2254(d).
 
 I.
 
 6
 Late in 1978, Carpino and a friend, Nancy Lynn Holtz, drove west from Philadelphia, heading for California. After experiencing car trouble, they took a bus from Needles, California, to Las Vegas, Nevada, where they met Wayne Rutledge on a street. Later, Rutledge introduced them to Lori Lambson and Kim Fuller, also known as Ronald Fain (hereinafter "Fain"). The two couples became friends, and Carpino and Holtz moved into a residence on Fourth Street with Lambson and Fain.
 
 
 7
 On the evening of September 16, 1978, Rutledge visited the two couples, and Lambson left early to go to work, leaving Fain with Carpino, Holtz and Rutledge. Sometime thereafter Rutledge said that his eyeglasses had been stolen and that he had filed a police report concerning the theft. Fain became upset and accused Rutledge of acting as a "snitch" and stated that Rutledge could no longer be trusted. An argument ensued. Fain and Carpino began beating and kicking Rutledge with escalating violence. The evidence indicated that Fain and Carpino took turns striking Rutledge in the head with a hammer. This beating continued for approximately 30 minutes.
 
 
 8
 Thereafter, Fain announced that "they could not let him live, they had to kill him." Fain and Carpino then escorted Rutledge out of the house. Approximately one-half hour later, Fain and Carpino returned. Fain stated that Carpino "killed him, had stabbed him, that stab was the final stab that killed him." Carpino stated that he "had killed him, that the motherfucker wouldn't squeal on anybody anymore."
 
 
 9
 Fain then stated that he "wanted to start, like, an, a Charles Manson-type family, where he would have followers that would do what he wanted them to do." Fain told Holtz that Carpino had proved his loyalty by killing Rutledge and that Holtz was next to prove her loyalty. She then asked to see the body. Carpino and Fain escorted her to the location where she viewed the remains and touched a limp arm.
 
 
 10
 When Lambson returned to the apartment shortly after 3 a.m., Fain advised her that "we've killed [Rutledge]." Fain told Lambson that he had "stabbed Wayne and handed the knife to Joe so that Joe could stab him." Fain then escorted Lambson to the location of the body.
 
 
 11
 Rutledge's body was discovered on December 19, 1978. Garbage had been dumped on the body and a cinder block dropped on his head.
 
 
 12
 Carpino and Holtz lived at the residence on Fourth Street until January 1979, when they left Las Vegas and returned to Philadelphia. Carpino remained in Pennsylvania until he was arrested as a fugitive from Nevada on December 1, 1986. After he was extradited to Nevada, he was incarcerated in the Clark County jail to await trial. While there, he contacted an acquaintance, Karen Newton, who visited him. During a conversation with her, Carpino told her that "he was the one that had committed the murder and that [Fain] was the one that was, like, a witness." Carpino also stated that the murder was done execution-style.
 
 II.
 
 13
 We first address Carpino's constitutional arguments concerning the lapse of time between the murder and the arrest, and between the arrest and the trial.
 
 A.
 
 14
 With respect to preindictment delay, the Supreme Court has explained that to establish a due process violation under the Fifth Amendment, a defendant must show that the delay "was undertaken by the Government solely 'to gain tactical advantage over the accused' " and that actual prejudice resulted. United States v. Lovasco, 431 U.S. 783, 790, 795 (1977) (quoting United States v. Marion, 404 U.S. 307, 324 (1971)).
 
 
 15
 Carpino has failed to show that the delay "was undertaken by the Government solely 'to gain tactical advantage over the accused.' " At worst, the government was negligent, but a finding of negligence negates intention.
 
 
 16
 We agree with the district court's determination in the present case:
 
 
 17
 The Nevada Supreme Court found that although the State was negligent in [its] handling of the case during the pre-arrest period of time, Petitioner had not shown that he was actually prejudiced by the delay attributable to the State.... Petitioner has also failed to show this court any actual prejudice. Cf., Stoner v. Graddick, 751 F.2d 1535 (11th Cir.1985) (19 year delay from the date of the offense until indictment did not violate the petitioner's due process rights).
 
 
 18
 Slip op. at 4; E.R. at 384.
 
 
 19
 Carpino's claim that the lapse of time between the murder and the indictment violated his due process rights is without merit.
 
 B.
 
 20
 The right to a speedy trial is secured by the Sixth Amendment. The determination whether a violation has occurred must be made with reference to four factors: the length of the delay, the reason for the delay, whether the defendant asserted this right and whether any prejudice occurred. Barker v. Wingo, 407 U.S. 514, 530 (1972).
 
 
 21
 Here, too, we accept the district court's analysis. Slip op. at 3; E.R. at 383. Ten and a half months elapsed between Carpino's arrest and trial. One month was spent disposing of his pretrial habeas petition. Another three-and-half-month postponement was granted at the request of his own counsel, leaving a five-month delay attributable to the state. This is well within the constitutional limits. Cf. Barker, 407 U.S. at 533-36 (five-year delay due to various factors was not violation of Sixth Amendment).
 
 
 22
 Carpino's Sixth Amendment claim must be rejected.
 
 III.
 
 23
 Carpino next raises questions relating to rulings on the evidence at trial. It must be emphasized that evidentiary rulings may violate state law and yet not rise to the level of a due process deprivation. Habeas corpus relief is not appropriate unless the federal Constitution is offended.
 
 A.
 
 24
 At trial, Carpino sought to introduce the testimony of Detective Mike Maddock, who investigated the murder of another person, Bobby Thomas. Maddock concluded that Fain had committed this crime. The following offer of proof was made by defense counsel, part of which appears to consist of statements purportedly made by Fain:
 
 
 25
 Detective Maddock would state essentially that Ron Fain basically tried to lay everything off on a Eugene Marty who is also known as "the worm," and "the worm" stabbed Bobby Thomas and said the mother fucker wouldn't die.
 
 
 26
 Thats when I told him that if he that if you were going to turn off a lawnmower, you have to pull the spark plug and thereupon took the knife and stabbed Bobby Thomas through the eyes.
 
 
 27
 Bobby Thomas then, according to Ron Fain, was thrown out of the truck. Bobby Thomas pulled his own pants down and then attempted to insert a finger into his anus according to Ron Fain.
 
 
 28
 Appellees' Brief at 20.
 
 
 29
 The defense theory apparently is that these events are similar to the circumstances surrounding the murder of Rutledge and thus should have been admitted to show Fain's culpability for both murders. We are persuaded that in excluding this testimony, the trial court did not violate Carpino's due process rights. That Fain pleaded guilty to second-degree murder in the killing of Bobby Thomas does not establish that he was the most probable perpetrator of the murder of Rutledge. The district court determined that the exclusion of these statements as inadmissible hearsay did not rise to the level of a constitutional violation. We agree.
 
 
 30
 It must be noted that in Carpino's petition, he does not allege that this exclusion violated the Constitution or laws of the United States. Habeas relief may not be granted in the absence of violations of federal law. 28 U.S.C. § 2254(a); see also Harris v. Rivera, 454 U.S. 339 (1981).
 
 B.
 
 31
 Carpino next argues that the trial court deprived him of due process rights by admitting the testimony of Lori Lambson and Nancy Lynn Holtz. It bears repeating that federal habeas corpus jurisdiction is limited to issues involving alleged violations of the Constitution, laws or treaties of the United States. A federal writ is not issued on the basis of errors of state law alone. Pulley v. Harris, 465 U.S. 37 (1984). The federal courts normally will not entertain any matter that relates solely to state law in the federal habeas corpus review.
 
 
 32
 Carpino argues that the testimony of Holtz and Lambson should have been excluded because their testimony constituted uncorroborated accomplice testimony and as such was not admissible under Nev.Rev.Stat. § 175.291, which requires corroboration of accomplice testimony. We agree with the state of Nevada here (1) that neither Lambson nor Holtz could be accomplices as a matter of state law and (2) that their testimony was corroborated by Karen Newton.
 
 
 33
 Carpino is unable to sustain the argument that these evidentiary rulings violated his federal constitutional rights.
 
 IV.
 
 34
 The information filed in this case charged Carpino with murder in that he wilfully and feloniously killed Rutledge by stabbing him with a knife. Carpino argues that the state relied at trial on the theory that he aided and abetted the murder of Rutledge. Thus, the argument runs, Carpino's right to a fair trial was violated because the information did not charge aiding and abetting.
 
 
 35
 We are not persuaded. The state's theory at trial was that Carpino stabbed Rutledge to death. The evidence established that Carpino delivered the fatal knife wound. Further, he admitted to Karen Newton that he had committed the murder. The state's theory was not that Carpino aided and abetted another in the murder. Accordingly, the information contained no due process defect.
 
 V.
 
 36
 Carpino next argues that he was denied his right to a fair trial by the trial court's exclusion of evidence tending to impeach hostile witnesses. Defense counsel obtained a SCOPE printout, a record from a police department, regarding Lori Lambson. Counsel also had a second document, a certified copy of a "rap sheet" dealing with Karen Newton's criminal history.
 
 
 37
 Habeas relief may be granted on the basis of incorrect state court evidentiary rulings that are so prejudicial as to jeopardize a fair trial. Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 974 (1991). Here, Carpino does not allege that the state court erred in applying the state law of evidence. Instead he argues that the trial court abused its discretion in excluding the disputed evidence. A trial court's abuses of discretion are reviewable on direct appeal but are irrelevant in a habeas proceeding.
 
 VI.
 
 38
 Carpino next argues that he is entitled to relief because the judge and prosecutor made references to Charles Manson during the proceedings. At voir dire, Judge Reed questioned prospective jurors on their willingness to hand down a death sentence if they were presented with a particularly heinous murder, and he mentioned Charles Manson by way of illustration. During opening statement, the prosecutor said, "Mr. Fain made the statement that he ... had been interested in starting some type of Charles Manson-like group and that Carpino had participated in the killing to prove that he was worthy of membership in the group and that Lynn Holtz had gone to the scene and touched the body as a way of proving herself to the two men." Appellees' Brief at 34.
 
 
 39
 A prospective juror's opposition to capital punishment, like any personal bias that will interfere with his or her ability to judge a case impartially, may be grounds for excusing that prospective juror. Wainwright v. Witt, 469 U.S. 412, 429 (1985). The trial judge certainly may ask questions on this issue. Judge Reed's questioning was restrained and to the point and provides no basis for habeas relief.
 
 
 40
 The prosecutor's remarks in his opening statement also were not improper. He merely described evidence that he intended to elicit during the course of the trial. Such evidence was presented, including Fain's statements after the murder that he "wanted to start, like, an, a Charles Manson-type family, where he would have followers that would do what he wanted them to do." The prosecutor's reference to Charles Manson was not constitutionally invalid.
 
 VII.
 
 41
 Carpino argues that the court's refusal to give proposed jury instructions on battery as a lesser-included offense and on accomplice testimony constituted a denial of due process sufficient to warrant habeas relief.
 
 
 42
 Due process requires that a lesser-included offense instruction be given in a capital case when the evidence warrants such an instruction. Beck v. Alabama, 447 U.S. 625 (1980), construed in Hopper v. Evans, 456 U.S. 605, 610 (1982); Woratzeck v. Ricketts, 820 F.2d 1450, 1457 (9th Cir.1987), vacated on other grounds, 486 U.S. 1051 (1988). We are satisfied that the evidence presented in this case supports a finding that Carpino intentionally killed Rutledge. The evidence did not warrant an instruction on battery.
 
 
 43
 Carpino offered proposed jury instructions calling attention to the unreliability of accomplice testimony. The judge did not instruct the jury as requested, but did instruct the jury on the definition of an accomplice under Nevada law. We find no error and no constitutional deprivation.
 
 VIII.
 
 44
 Finally, Carpino argues that he was denied a fair trial because at the penalty hearing the court allowed the testimony of Robert L. Williams, a representative of the Pennsylvania Department of Parole and Probation, and admitted evidence of Carpino's prior convictions. In such proceedings, "evidence may be presented concerning aggravating and mitigating circumstances relative to the offense, defendant or victim and on any other matter which the court deems relevant to sentence, whether or not the evidence is ordinarily admissible." Nev.Rev.Stat. § 175.552. The court may consider evidence that "relates to the character and record of the individual offender." Rogers v. State, 101 Nev. 457, 705 P.2d 665 (1985), cert. denied, 476 U.S. 1130 (1986). The evidence concerning Carpino's prior convictions was admissible, and we find no constitutional error.
 
 IX.
 
 45
 We have considered all of Carpino's contentions. The judgment of the district court denying the writ of habeas corpus is
 
 
 46
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3