976 F.2d 737
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Daniel SILVA, Petitioner-Appellant,
v.
B.J. BUNNELL, Superintendent; James Rowland; Daniel
Lungren, Respondents-Appellees.
 No. 90-56313.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 1, 1992.
Filed Sept. 23, 1992.
Decided Sept. 23, 1992.
As Amended Dec. 7, 1992.
 
 1
 Before D.W. NELSON and DAVID R. THOMPSON, Circuit Judges, and PANNER, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner, Daniel Silva, appeals a district court judgment dismissing his petition for a writ of habeas corpus. Petitioner contends that the evidence presented at his 1976 murder trial was insufficient to sustain a conviction. He also assigns as error the state trial court's refusal to grant a new trial based on (i) newly discovered evidence and (ii) police and prosecutorial misconduct. As an alternative to the issuance of a writ of habeas corpus, petitioner requests a new trial or an evidentiary hearing. We affirm the judgment of the district court.
 
 FACTS AND PROCEDURAL HISTORY
 
 4
 I. The murder conviction.
 
 
 5
 On the evening of Sunday, February 1, 1976, Stella Chavez was celebrating her birthday with friends in the living room of her home in Bell, California. As a favor to her friend, Bertha Medina, Chavez was babysitting the child of Edward Garcia, petitioner's co-defendant. Shortly after 9:00 p.m., two men came to Chavez's house and asked for someone named "Yolanda" or "Yoli." They then proceeded through the screen door and fired several shots into the room. During the shooting, one of the attackers went briefly into a bedroom in the back of the house. Chavez was hit by gunfire and died on February 6, 1976. The murder was witnessed by Mary Briones, Connie Estrada, Chavez's 11-year-old sister (Connie), and Henry Estrada, Sr., Chavez's father (Estrada).
 
 
 6
 The shooting was apparently the result of gang violence. Petitioner and Garcia were members of the 18th Street Gang. Medina was also a member of the 18th Street Gang. Medina testified that Chavez had been a member of The Hazards, a rival gang.
 
 
 7
 Following the shooting, petitioner and Garcia were arrested and charged with one count of first-degree murder with use of a firearm (Cal.Pen.Code §§ 187, 12022.5) and two counts of assault with a deadly weapon (Cal.Pen.Code § 245(a)). The three eye-witnesses to the shooting, Briones, Connie, and Estrada, were shown photographs of suspects and attended police line-ups. Briones was shown police photographs on two occasions, but picked out petitioner's photograph only on the second occasion. She attended two line-ups, but identified petitioner only at one line-up. Connie attended a line-up, but was too scared to make an identification. She did, however, identify petitioner at the preliminary hearing. Estrada attended a line-up, but did not identify petitioner. Briones, Connie, and Estrada each identified petitioner at the trial as the killer.
 
 
 8
 Medina's testimony at trial placed petitioner at the Chavez home at or near the time of the shooting. She stated that, shortly before the shooting, she accompanied petitioner and Garcia to Chavez's house to retrieve Garcia's child. Medina further related that petitioner and Garcia had remained in the car while she went to get the baby, after which they all returned to her house without incident. Witnesses at the Chavez house, however, indicated that Medina picked up the child at approximately 9:00 p.m., and that the killers arrived shortly after she left.
 
 
 9
 On July 23, 1976, a jury convicted petitioner and Garcia on all counts.
 
 
 10
 II. Petitioner's motion for new trial.
 
 
 11
 Following petitioner's conviction, Mario Borge and Nicholas Avila went to the office of petitioner's attorney, Earl Siddall, and confessed to the murder. Siddall tape recorded the confessions. He then moved for a new trial on the grounds that the confessions constituted newly discovered exculpatory evidence. The motion was supported by the signed declaration of Borge admitting his responsibility for the murder.
 
 
 12
 The hearing on petitioner's motion began on October 1, 1976. Borge was called as a defense witness and, against the advice of his attorney, authenticated the tape-recorded confession he had made at Siddall's office and identified the murder weapon. On cross-examination, Borge testified that petitioner and Garcia belonged to his gang and were his "home boys." He further testified that he did not expect a harsh sentence because he was only 15 years old at the time of the shooting. Borge also indicated that he did not hear anyone ask for "Yolanda," nor did he or Silva enter the back of the house during the shooting.
 
 
 13
 The court adjourned following Borge's testimony and the hearing was continued until the following week. At the request of the prosecutor, Deputy District Attorney Wheeler, the court admonished all parties that Borge could not be questioned further without his lawyer present.
 
 
 14
 Borge soon recanted his confession under somewhat unusual circumstances. On October 7, 1976, Detective Marvel of the Los Angeles Police Department informed Wheeler that he was investigating another gang incident in which petitioner was a suspect. Wheeler informed him that Borge had confessed to the Chavez murder, but that he believed the confession was fabricated. Detective Marvel decided to question Borge, indicating that he would share with Wheeler any information he learned about the Chavez case. Wheeler provided Marvel with Borge's address.
 
 
 15
 Marvel met with Borge and told him that the weapon used in the Chavez murder had also been used in a another murder committed in October 1975. Marvel further explained that, because Borge had confessed to the Chavez murder, he would also be held accountable for the October 1975 murder. Although Marvel's statements about the murder weapon and the impending prosecution against Borge were false, his tactics were effective. Borge promptly recanted his confession.
 
 
 16
 Marvel arrested Borge on a perjury charge and brought him to Wheeler's office. Notwithstanding the court order restricting attorney access to Borge, Wheeler met with Borge to discuss his recantation. Wheeler told Borge that Marvel had lied to him, and assured him that he would not be prosecuted for the October 1975 murder. Following his discussion with Wheeler, Borge understood that Marvel had deceived him, and that the Chavez murder weapon had not been used in a previous murder. Borge nevertheless maintained his innocence. Wheeler tape-recorded Borge's recantation.
 
 
 17
 Additional proceedings on petitioner's motion for new trial were held on October 8, 12, 15, and 18, 1976. At the October 8 session, Borge took the stand and denied killing Chavez. Regarding his confession, Borge testified that he thought he would do less time on a murder charge than petitioner or Garcia. Avila, Borge's compatriot, was also called to the stand. Avila refused to testify about the Chavez murder on Fifth Amendment grounds. Avila's tape-recorded confession was played in court.
 
 
 18
 Petitioner also presented testimony about the murder weapon. On September 30, 1976, a youth named Frank Villareal, acting at the direction of Borge, brought a .38 caliber revolver to the office of petitioner's attorney. Villareal testified that the gun was buried in the basement of the Avila home. The parties stipulated that the .38 revolver was the murder weapon.
 
 
 19
 The court denied petitioner's motion for new trial on the grounds that petitioner had failed to establish that his newly-discovered evidence would have altered the outcome of the trial.
 
 
 20
 III. The California appeals.
 
 
 21
 Petitioner appealed the trial court's decision to the California Court of Appeal. He argued that the denial of his new trial motion was erroneous in light of (i) Borge's confession and (ii) police and prosecutorial misconduct surrounding Borge's recantation. On October 27, 1977, the Court of Appeal affirmed petitioner's conviction in a lengthy, unpublished opinion.[1] Petitioner then filed a petition for hearing with the California Supreme Court raising the same issues which had been presented to the Court of Appeal. Petitioner, in pro per, filed a supplemental brief reiterating the arguments of his attorney and challenging the sufficiency of the evidence to support his conviction. The petition for hearing was denied on December 22, 1977.
 
 
 22
 IV. Federal habeas proceedings.
 
 
 23
 On November 14, 1989, petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Central District of California. He alleged that his federal constitutional rights had been denied when his motion for a new trial was denied and when he was convicted of murder based on insufficient evidence. Magistrate Judge Joseph Reichman filed a Report and Recommendation in which he recommended that the district court deny habeas relief.
 
 
 24
 On May 23, 1989, United States District Judge Harry L. Hupp adopted the magistrate judge's recommendation and entered a judgment dismissing the petition. The instant appeal followed.
 
 STANDARD OF REVIEW
 
 25
 The decision whether to grant or deny a petition for habeas corpus is reviewed de novo. United States v. Popoola, 881 F.2d 811, 812 (9th Cir.1989); Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989). "To the extent it is necessary to review findings of fact, the clearly erroneous standard applies." Norris, 878 F.2d at 1180.
 
 
 26
 In reviewing a district court's grant or denial of a habeas corpus petition, state court factual conclusions are entitled to a presumption of correctness under 28 U.S.C. § 2254(d), unless it appears that the state court proceeding was flawed for one of the reasons set forth at § 2254(d)(1)-(7). Sumner v. Mata, 449 U.S. 539, 550 (1981). This presumption does not attach, however, to a state court's resolution of mixed questions of fact and law. See Hamilton v. Vasquez, 882 F.2d 1469, 1471 (9th Cir.1989).
 
 
 27
 "A habeas petitioner is entitled to an evidentiary hearing if he has alleged facts which, if proven, would entitle him to relief and he did not receive a full and fair evidentiary hearing in state court." Norris, 878 F.2d at 1180. The decision to deny an evidentiary hearing is reviewed for abuse of discretion. United States v. Watts, 841 F.2d 275, 277 (9th Cir.1988).
 
 
 28
 When a reviewing court must consider the sufficiency of the evidence to support a verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); Gordon v. Duran, 895 F.2d 610, 612 (9th Cir.1990).
 
 
 29
 A trial court is not required to grant a motion for a new trial based on the mere existence of newly discovered evidence. Instead, the proper standard is the "probability of acquittal" standard--that is, "whether the new evidence would probably produce an acquittal." Quigg v. Crist, 616 F.2d 1107, 1112 (9th Cir.) (citation omitted), cert. denied, 449 U.S. 922 (1980). Petitioner carries a significant burden to show that the trial court abused its discretion in denying the motion for a new trial. United States v. Shaffer, 789 F.2d 682, 687 (9th Cir.1986).
 
 DISCUSSION
 
 30
 I. The evidence at trial was sufficient to sustain a conviction.
 
 
 31
 Petitioner contends that the three eye-witnesses to the murder, Briones, Connie, and Estrada, failed to make a reliable identification of him as the killer. Accordingly, he argues that the evidence was too weak to support a conviction under Neil v. Biggers, 409 U.S. 188 (1972).
 
 
 32
 In Neil, a case involving the reliability of an allegedly suggestive identification procedure, the Supreme Court set forth several factors to be considered in evaluating the reliability of identification testimony. Those factors include:
 
 
 33
 the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
 
 
 34
 Id. at 199-200. The Court did not discuss the relative weight to be accorded each factor, but observed that the central question before it was whether the identification evidence could be considered reliable under "the totality of the circumstances." Id.
 
 
 35
 When examined in light of the Neil criteria, the identification testimony of Briones, Connie, and Estrada passes muster. All three individuals witnessed various portions of the shooting incident from close range. Briones identified petitioner at a police line-up; Connie identified him at the preliminary hearing. At the trial all three witnesses made an unequivocal identification of petitioner as the killer. Reasonable jurors could regard the fact that petitioner was identified by three witnesses, rather than by one or two, as enhancing the reliability of the identification testimony. That the identification testimony was consistent with other evidence presented at the trial, such as Medina's testimony that petitioner and Garcia were at the Chavez home shortly before the murder, similarly enhanced its reliability. Finally, petitioner has presented no compelling evidence that the identification procedures employed by the police before the trial were unduly suggestive. Therefore, there is no merit to petitioner's contention that the identification evidence was so unreliable as to offend due process.
 
 
 36
 The bulk of petitioner's argument focuses on various weaknesses in the identification testimony. Such questions of credibility are reserved for the trier of fact, not the reviewing court. Viewing the evidence in the light most favorable to the prosecution, reasonable jurors could have found beyond a reasonable doubt that petitioner and his co-defendant were responsible for the Chavez murder. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 37
 II. The state trial court was not required to grant petitioner's new trial motion because of newly discovered evidence.
 
 
 38
 Petitioner contends that the trial court was required to grant his motion for new trial based on newly discovered evidence; namely, the confessions of Borge and Avila. Petitioner discounts the effect of Borge's recantation arguing that a recantation, of testimony must be viewed with suspicion, particularly where it is the result of police and prosecutorial coercion. Petitioner also points out that Avila never recanted his tape-recorded confession.
 
 
 39
 The state trial court found that the confessions of Borge and Avila, when viewed in light of Borge's recantation and the other evidence presented at the hearing, did not establish the probability of an acquittal. Quigg, 616 F.2d at 1112. The trial court was within its discretion in denying petitioner's motion.
 
 
 40
 The record contains significant evidence that the confessions of Borge and Avila were fabrications. Both were members of the 18th Street Gang and considered petitioner and Garcia to be their "home boys." Borge testified that he thought he would get a lighter sentence than petitioner or Garcia because of his youth. Finally, Borge's recounting of the shooting conflicted with the testimony of several trial witnesses. The trial court reasonably could have concluded that the confessions of Borge and Avila, when considered in light of all the evidence, were not credible. Because there has been no showing that the state court proceedings were inadequate for any of the reasons set forth at 28 U.S.C. § 2254(d)(1)-(7), the trial court's factual determination is presumptively correct. 28 U.S.C. § 2254(d). See also Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").
 
 
 41
 Petitioner's assertion that the trial court erroneously permitted evidence of Borge's recantation is without merit. There is little doubt that Borge's initial recantation was, as petitioner contends, the product of Detective Marvel's deception. However, Borge stood by his statement even after Wheeler had assured him that he would not be prosecuted for the October 1975 murder. At the continuation of the hearing on the new trial motion, Borge testified to his understanding that he would not be charged with two murders. Under the circumstances, it was not unreasonable for the trial court to conclude that any coercive influence resulting from Marvel's misrepresentations was dispelled following Borge's discussion with Wheeler. As both parties regard this conclusion as a determination of fact, it too is presumed correct under § 2254(d).
 
 
 42
 Based on the foregoing, the state trial court's finding that petitioner's newly discovered evidence did not warrant a new trial was based squarely on its determination of factual issues. The trial court's factual findings are not clearly erroneous. Petitioner has not established that the new evidence presented at this hearing would probably have produced an acquittal. Petitioner has not met his burden. Therefore, the district court correctly denied habeas relief.
 
 
 43
 III. The state trial court was nor required to grant petitioner's new trial motion because of police and proseccutorial misconduct.
 
 
 44
 Petitioner contends that Detective Marvel committed misconduct when he lied to Borge about the October 1975 murder, and that prosecutor Wheeler committed misconduct when he violated the trial court's order by meeting with borge without other counsel present. Petitioner argues that the misconduct of Marvel and Wheeler rendered Borge's recantation inherently untrustworthy. He concluses that the coercive influences brought to bear on Borge were not dispelled by subsequent events and, for this reason, it was error for the trial court to consider Borge's recantation.[2]
 
 
 45
 Petitioner's argument differs little from that raised in support of his second assignment of error. As before, he challenges the state trial court's factual determination that Borge's recantation was reliable. As before, the argument fails.
 
 
 46
 It was entirely appropriate for the trial court to consider Borge's recantation in determining whether petitioner's newly discovered evidence would have resulted in an acquittal. Moreover, there is evidence in the record to support the trial court's finding that Borge's recantation was genuine. The trial court's factual findings are presumptively correct absent convincing evidence to the contrary. 28 U.S.C. § 2254(d). Petitioner has not carried his burden of proof. Therefore, the district court properly dismissed the habeas petition.
 
 
 47
 IV. Petitioner has not established an entitlement to an evidentiary hearing.
 
 
 48
 In the event the dismissal of his habeas petition is affirmed, petitioner requests an evidentiary hearing. There is no evidence that petitioner's new trial motion did not receive a full and fair hearing at the state court. Therefore, petitioner has not established grounds for an evidentiary hearing. Norris, 878 F.2d at 1180.
 
 CONCLUSION
 
 49
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R 36-3
 
 
 [1]
 Petitioner asks that we take judicial notice of the California Court of Appeal proceedings. We do so. See United States v. Wilson, 631 F.2d 118, 119 (9th Cir.1980) ("a court may take judicial notice of ... the records of an inferior court in other cases" (citations omitted)). Because respondent has not objected, judicial notice is mandatory pursuant to Fed.R.Evid. 201(d)
 
 
 [2]
 Petitioner maintains that detective Marvel and prosecutor Wheeler acted in concert to coerce Borge into recanting his confession. the evidence does not support this. Marvel lied to Borge in questioning him, but Wheeler did not. Wheeler set the record straight. There is no evidence of a conspiracy between Marvel and Wheeler
 It is clear, however, that prosecutor Wheeler spoke privately with Borge in direct disobedience of the district court's order. Although this prosecutorial misconduct does not require a new trial, the prosecutor is admonished that his conduct was improper. We leave to the district court how it may wish to deal with the violation of its order.