24 F.3d 249
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Franklin D. ROOF, Petitioner-Appellant,
v.
Manred MAASS, Superintendent, Oregon State Penitentiary,
Respondent-Appellee.
 No. 93-35014.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 7, 1994.
Decided April 29, 1994.
 
 Before: POOLE and TROTT, Circuit Judges, and KING,* District Judge.
 MEMORANDUM**
 Petitioner, an Oregon state prisoner, appeals the second dismissal of his petition for a writ of habeas corpus. He was convicted of burglary, rape and sodomy in 1985. After unsuccessfully appealing his conviction in state court, petitioner filed a habeas corpus petition which was denied by the district court in 1991. This court heard his appeal and on September 22, 1992, found that petitioner's due process rights had been violated by the admission of identification testimony based on a suggestive pretrial identification and remanded to the district court to determine whether the admission of the testimony was harmless beyond a reasonable doubt. Upon remand, the district court found that the error was harmless. We now affirm.
 I.
 We have jurisdiction over the district court's final judgment pursuant to 28 U.S.C. Secs. 1253 and 1291.
 As on the first appeal, this court reviews the denial of the writ de novo. Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989). Since the district court decided the remanded issue, the Supreme Court has changed the standard which this court must apply to measure whether a trial error merits a writ of habeas corpus. Such error, which occurs during presentation of the case to the jury,[1] is no longer to be reviewed under the harmless error standard of Chapman v. California, 386 U.S. 18 (1967), when the federal courts review a state conviction pursuant to 28 U.S.C. Sec. 2254. Brecht v. Abrahamson, 113 S.Ct. 1710, 1717, 1721-22 (1993). This court must now review the record de novo to determine whether the error previously identified "had substantial and injurious effect or influence in determining the jury's verdict." Id. at 1718 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). This standard is designed to be "less onerous" to the state, and requires that the prisoner show "actual prejudice," rather than just a reasonable probability of prejudice. Id. at 1722.
 As Justice Stevens put it in his concurrence:
 To apply the Kotteakos standard properly, the reviewing court must ... make a de novo examination of the trial record....
 The purpose of reviewing the entire record is, of course, to consider all the ways that error can infect the course of a trial.... The habeas court cannot ask only whether it thinks the petitioner would have been convicted even if the constitutional error had not taken place.... It requires the reviewing court to decide that "the error did not influence the jury," and that "the judgment was not substantially swayed by the error." (cites omitted)
 Id. at 1724 (Stevens, J., concurring).
 
 II.
 
 1
 We previously concluded that the admission of testimony regarding the victim's pretrial identification of Roof and testimony based on that identification, which her in-court identification of Roof undoubtedly was, was constitutional error. We must now evaluate that error in the context of the entire trial to determine whether it had a substantial and injurious effect on the jury's verdict.
 
 
 2
 Petitioner makes several arguments in support of his conclusion that the trial was fatally flawed by the error: eyewitness identification testimony is so strong that its admission necessarily has a substantial effect on the jury, the other evidence in the case was circumstantial, Roof testified that he did not commit the crimes, and the prosecution argued the identification testimony in closing argument.
 
 
 3
 Roof refers us to the statement of the Second Circuit: "There can be no reasonable doubt that inaccurate eyewitness testimony may be one of the most prejudicial features of a criminal trial." Kampshoff v. Smith, 698 F.2d 581, 585 (2d Cir.1983). Even if this statement is true, and it well may be, the standard we must apply is no longer reasonable doubt. There is no per se rule that the erroneous admission of such evidence proves a substantial and injurious impact on the jury. We must consider the record as a whole, and this evidence in the context of other evidence.
 
 
 4
 Similarly, the prosecutor's reliance on identification testimony in closing argument does not ipso facto entitle Roof to the writ. He cites Blackburn v. Cross, 510 F.2d 1014, 1019-20 (5th Cir.1975), in which the Fifth Circuit concluded that despite the convincing case against the defendant, the reliance of the prosecutor on the identification testimony made it "impossible for us to conclude that the erroneous admission of [the eyewitness'] testimony was harmless beyond a reasonable doubt." Again, this court is not to apply that standard. We must consider whether the identification was "likely to have a strong impact on the minds of the jurors." McKinney v. Rees, 993 F.2d 1378, 1386 (9th Cir.), cert. denied sub. nom. Olivarez v. McKinney, 114 S.Ct. 622 (1993) (finding that erroneously admitted bad character evidence violated the Brecht standard).
 
 
 5
 As Roof points out, the other evidence in the case included his own testimony at trial that he did not commit the crimes. This was the only exculpatory evidence presented. Roof testified that Dill had brought him the stolen goods to fence. However, the prosecution introduced unrefuted evidence that Dill has blood Type O, unlike Allmon's assailant, who was Type A.
 
 
 6
 The burden, of course, was on the prosecution to convince the jury of Roof's guilt. But the prosecution's reliance on Allmon's identification was not as heavy as Roof would like the court to believe. The prosecution discussed it in closing argument in the following way:
 
 
 7
 The questioning [sic] from the very beginning has been one of identification. Joyce Allmon's ability to identify her attacker obviously was thwarted by the ski mask that he had on, the mask that he was wearing and so we have two other ways of identifying him and that is basically by the testimony of Stephanie Heller and circumstances that corroborate what Stephanie Heller told you.
 
 
 8
 ....
 
 
 9
 Joyce Allmon, again, you listened to her testimony with respect to her ability to describe her attacker and how she was able to do that.... She described for you the sensation she had with respect to his physical appearance, his physical strength, muscle tone, body and everything else and she has given you his height.... She has seen the defendant on three other occasions ... On those occasions she indicted to you ... that the defendant fits her perception of her attacker excellently. She also tells you that what she could hear of his voice, she listened to it, and that it was similar.... [I]t's a similar voice, I cannot rule it out. I cannot tell you it's the man. Certainly she is being honest and candid with you.
 
 
 10
 The prosecution admitted that Allmon's identification was not conclusive, and asked the jury to use other evidence to decide the question of identity.
 
 
 11
 As flawed as the pretrial identification was, its flaws were not hidden from the jury. Defense counsel pointed out the lack of any proper line-up or voice comparison, the vagueness of Allmon's identification, and all the circumstances of the crime that prevented Allmon from learning much about her attacker's appearance. Allmon admitted on the stand that she could say no more than that Roof, like her attacker, had a "mid-range" voice. In fact, she admitted on that stand that she could not finger Roof as unquestionably her attacker.
 
 
 12
 Despite the obvious limitations to Allmon's identification, if her testimony as an eyewitness was the only evidence of identity, the erroneous admission of the flawed identification surely would have had a substantial effect on the jury. It would have necessarily been the basis for the conviction. However, in this case, its effect was diluted by the other identity evidence, both physical and testimonial.
 
 
 13
 Roof was shown to have the same blood type as the assailant. Roof's girlfriend was in possession of jewelry taken from Allmon, and Roof admitted the items were in his house. Roof owned a pair of rough leather gloves such as Allmon described her attacker wearing.
 
 
 14
 Finally, there was a wealth of circumstantial evidence provided by Heller. She testified that Roof told her about breaking into Allmon's home, and being surprised by the occupant, whom he tied up and disrobed. Heller testified that Roof told her Allmon's name, and information about her residence in California and her car. Heller testified that Roof owned a dark-colored ski mask, which he got rid of, although Roof denied owning any such mask. The jury had to evaluate her testimony in the face of several attacks on her credibility as a witness, including her admission that she lied at a previous hearing. Still, the fact that she was in possession of Allmon's jewelry remained undisputed.
 
 
 15
 Given the unreliability of the identification, an unreliability not hidden from the jury, and the abundance of other circumstantial evidence pointing to Roof as the perpetrator, we conclude that the trial error did not have substantial effect on the jury's verdict. The erroneously admitted evidence was not of the kind to have a substantial injurious impact on the jury. While eyewitness testimony is powerful, Allmon's testimony only amounted to statements that Roof's average physique and average voice fit that of her assailant. The inconclusiveness of this identification was made quite clear to the jury. Unlike the prosecutor in McKinney (993 F.2d 1382 and 1386 n. 10), the prosecutor did not tell the jury that Allmon's identification was a crucial factor in the case, but invited the jury to look at Heller's testimony and the physical evidence.
 
 III.
 
 16
 Under the new Brecht standard for evaluating the effect of unconstitutional trial error, we find that the erroneous admission of identification testimony based on impermissibly suggestive pretrial identification did not have a substantial and injurious effect on the jury's verdict. The dismissal of the petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Petitioner argues briefly that this case does not involve "just a trial error," because the suggestive identification occurred before trial. However, what the court is considering here is the admission of evidence of that identification at trial, and the subsequent identification during trial which the court previously held was based on the suggestive pretrial identification. The threat to the fundamental fairness of the trial occurred with the erroneous admission, and could have been prevented by keeping Allmon's identification of Roof from the jury. See Brecht v. Abrahamson, 113 S.Ct. 1710, 1717 (1993) (trial error "may ... be quantitatively assessed in the context of other evidence presented," whereas structural defects are errors such as the deprivation of counsel)