**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Larry HALLIBURTON,**
**Defendant–Appellant.**

No. 88–5051.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1989.

Decided March 24, 1989.

J. Douglas McVay, Phoenix, Ariz., for defendant-appellant.

Ellyn M. Lindsay, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before ALARCON, BRUNETTI and THOMPSON, Circuit Judges.

ALARCON, Circuit Judge:

Larry Halliburton appeals from the judgment of conviction entered after a jury found him guilty of conspiracy to distribute cocaine pursuant to 21 U.S.C. § 846 and possession with intent to distribute cocaine pursuant to 21 U.S.C. § 841(a)(1). Halliburton was sentenced to concurrent sen-

tences of eleven years in prison and an additional five years of supervised release.

During trial, after the prosecution rested its case and Halliburton had testified, the district court issued an order terminating Halliburton's release on the ground that he was a flight risk. The district court found that the government's proof was overwhelming and Halliburton's version of the facts was not credible. The district court also considered the fact that Halliburton had no community ties and that he faced a lengthy prison term upon conviction.

Halliburton seeks reversal on the ground that his right to a fair trial was unfairly prejudiced when members of the jury observed him in handcuffs outside the courtroom following the district court's order terminating his release. We disagree and affirm.

## I

Whether a defendant's right to a fair trial is violated because members of the jury observe him in handcuffs is a question of law that is reviewed independently without deference to the district court's determination of this issue. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). If we determine constitutional error occurred, we must decide whether it was harmless beyond a reasonable doubt. *Chapman v. State of California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

## II

On September 25, 1987, a federal grand jury returned an indictment charging Halliburton and his four co-defendants with conspiracy to distribute cocaine pursuant to 21 U.S.C. § 846 and possession with intent to distribute cocaine pursuant to 21 U.S.C. § 841(a)(1).

On October 5, 1987, Halliburton appeared before the United States Magistrate and entered a plea of not guilty. The trial was set for November 17, 1987.

Jury selection began on November 17, 1987. The next day the jury was impan-eled and sworn. At the start of trial on November 18, 1987, Halliburton was the only defendant who was not in custody. On the second day of trial, the Assistant United States Attorney advised the court that some jurors had seen Halliburton's co-defendants in custody. The district judge did not pursue a request to excuse those jurors because he felt the jurors already knew that some defendants were in custody because of the placement of the marshals in the courtroom. The court stated:

> We assiduously work in this court to try to conduct the trial in such a way as to minimize the appearance of custody.... As I say, in the real world, if you don't think those jurors know that there is custody involved here, you aren't very realistic.

On Friday, November 20, 1987, after the government rested its case and Halliburton had testified on direct and cross-examination, the trial was suspended for one-and-a-half weeks because of a scheduled vacation of one of the defense attorneys. After the jury left the courtroom, the trial judge held a hearing regarding the status of Halliburton's bail. The district court concluded that Halliburton's release should be terminated because he posed a flight risk. The court based its decision upon the strength of the government's case, the incredible nature of Halliburton's testimony, the probable lengthy prison sentence which Halliburton faced, and the fact that Halliburton had no community ties.

The trial resumed one-and-a-half weeks later on December 1, 1987. Halliburton was in custody along with the other defendants.

On December 4, 1987, Halliburton moved for a mistrial because some jurors had seen him in handcuffs outside the courtroom. The court denied the motion for a mistrial because there was no showing of prejudice and because the evidence against all defendants was overwhelming. The court held a hearing, however, to entertain suggestions for taking curative measures to eliminate any possible prejudicial effect that might result from the jurors observations. The

court suggested to counsel that the jurors could be examined to assess the impact, if any, of the jurors' view of the defendants in handcuffs. All counsel rejected this suggestion. Counsel also rejected the court's suggestion that the parties agree to a trial by a jury of less than twelve persons. Instead, counsel agreed to the following measures:

1) The court would direct that the marshals arrange what it termed a "charade" during recesses to deceive the jurors by causing them to believe that Halliburton was no longer in custody. For the balance of the trial, during recesses, Halliburton was allowed to sit without handcuffs with his girlfriend in the hallway outside the courtroom.

2) The marshals would remain out of the jury's sight during the remainder of the trial.

3) The court would instruct the jury that a defendant's custody status is not a relevant factor in deciding guilt and should not be considered during jury deliberation.

Halliburton agreed to these measures without waiving his right to this appeal.

### III

Halliburton raises two issues on appeal.

*One.* Did the district court abuse its discretion by terminating Halliburton's release during trial?

*Two.* Did the order remanding Halliburton into custody during trial result in the impairment of his right to a fair trial because jurors who had seen him outside the courtroom, without handcuffs, prior to the suspension of trial on November 20, 1987, later saw him in handcuffs?

Whether the court abused its discretion in terminating Halliburton's release on bail is not determinative of the novel question presented in this appeal: Does prejudicial error automatically occur whenever jurors who had earlier seen a defendant freely moving about in the public corridor during recesses in the trial without visible restraints, later observe him outside the courtroom in handcuffs? For example, in *United States v. Allison,* 414 F.2d 407, 414

(9th Cir.) *cert. denied,* 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1969), we concluded that the order terminating release after a jury trial commenced was "erroneously entered." Nevertheless, we affirmed because we found that the error did not deny the accused his right to a fair trial. *Id.* Clearly, if the district court had not terminated Halliburton's release in the matter *sub judice,* this issue would not be before this court. It does not follow, however, that we should affirm if we conclude that the district court did *not* abuse its discretion in terminating Halliburton's release during trial. Rather, we must determine whether the record demonstrates that prejudice resulted from the jurors' view of Halliburton in handcuffs.

A jury's observation of a defendant in custody may under certain circumstances "create the impression in the minds of the jury that the defendant is dangerous or untrustworthy" which can unfairly prejudice a defendant's right to a fair trial notwithstanding the validity of his custody status. *Holbrook v. Flynn,* 475 U.S. 560, 569, 106 S.Ct. 1340, 1346, 89 L.Ed.2d 525 (1986) (quoting *Kennedy v. Cardwell,* 487 F.2d 101, 108 (6th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974)). Therefore, the dispositive issue is whether Halliburton's right to a fair trial was prejudicially impaired because jurors, who had seen him earlier move about without visible restraint, later briefly observed him in handcuffs outside the courtroom.

### IV

■ Halliburton contends that he was unfairly prejudiced by the fact that his custody was terminated after the government had rested its case and he had testified in his own defense, because the jury was aware that he had not been in custody at the start of the trial. Upon questioning by the court Halliburton testified, in support of his motion for a mistrial, that on December 3, 1987 he was observed handcuffed to a co-defendant by at least two jurors as the elevator doors opened. The marshals prevented Halliburton from entering the elevator because "there was a

juror in the elevator." Later on the same day, the same female juror again saw him in handcuffs "downstairs."

Neither the judge nor the government prosecutor was responsible for this brief and inadvertent display of Halliburton in handcuffs in the presence of the jurors. Nevertheless, we agree with Halliburton that the questionable practice of the United States Marshal's Office, of transporting prisoners in restraints through public corridors, inadvertently created a risk of prejudice to the accused's right to a fair trial. The question we must decide is whether knowledge by certain jurors that an accused is under restraint or in custody "was so inherently prejudicial that respondent was thereby denied his constitutional right to a fair trial." *Holbrook*, 475 U.S. at 570, 106 S.Ct. at 1346. If we find that the jurors' brief view of Halliburton in handcuffs was not inherently prejudicial, we must then determine whether appellant has carried his burden of affirmatively showing actual prejudice. *Id.*

## V

The Supreme Court has distinguished the discrete levels of prejudice that may result from a jury's viewing an accused under government restraint. Compelling an accused to appear in prison attire before a jury presents "an unacceptable risk" of prejudice. *Estelle v. Williams*, 425 U.S. 501, 504–09, 96 S.Ct. 1691, 1693–95, 48 L.Ed.2d 126 (1976). "[C]ompelling an accused to wear jail clothing furthers no essential state policy." *Id.* at 505, 96 S.Ct. at 1693. The Supreme Court has also concluded that a defendant whose disruptive behavior threatens to prevent a trial from proceeding may be bound and gagged in the presence of the jury if that is "the fairest and most reasonable way to handle [such] a defendant." *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed. 2d 353 (1970).

In *Holbrook*, 475 U.S. at 568–69, 106 S.Ct. at 1346, the Supreme Court was faced with the question whether the presence of uniformed state troopers during trial "is the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial." *Id.* The Supreme Court held that deployment of uniformed state troopers in a courtroom during a jury trial is not inherently prejudicial because of the many "inferences that a juror might reasonably draw from the officers' presence." *Id.* at 569, 106 S.Ct. at 1346. Guards do not necessarily indicate that a defendant is "particularly dangerous or culpable." *Id.* They could be present to guard against interruptions or "to ensure that tense courtroom exchanges do not erupt into violence." *Id.* The Supreme Court also observed that "it is entirely possible that jurors will not infer anything at all" because it is common to see guards placed in a courtroom. *Id.*

The Supreme Court held in *Holbrook* that because the presence of uniformed state troopers in the courtroom was not inherently prejudicial, there was no need to justify the practice by requesting the government to prove that their presence met an essential state interest. *Id.* The Supreme Court noted further in *Holbrook* that even if a "slight degree of prejudice" resulted from the presence of uniformed state troopers in the courtroom, "sufficient cause for this level of security could be found in the State's need to maintain custody over defendants who had been denied bail after an individualized determination that their presence at trial could not otherwise be ensured." *Id.* at 571, 106 S.Ct. at 1347. The Supreme Court also observed that "if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Id.* at 572, 106 S.Ct. at 1348.

The Supreme Court has not been presented with the question whether a brief and inadvertent observation by jurors of a defendant in handcuffs outside the courtroom compels an automatic reversal. This issue has been considered by several circuits including this court. In *United States v. Pina*, 844 F.2d 1 (1st Cir.1988), the First Circuit observed that any danger of prejudice to a defendant is slight if a juror's view of [an accused] in custody is brief and

inadvertent. *Id* at 8. In *Wilson v. McCarthy*, 770 F.2d 1482 (9th Cir.1985), we held that a jury's brief, inadvertent observation of a defendant in custody does not compel reversal in the absence of an affirmative showing of actual prejudice. *Id.* at 1485–86.

In a case involving a claim that the accused was prejudiced when jurors accidentally observed him in custody, the First Circuit held that even the "most unsophisticated juror" knows that defendants may have to post bail and that some lack the resources to do this. *Dupont v. Hall*, 555 F.2d 15 (1st Cir.1977). The court in *Dupont* also noted that "[u]nder these circumstances we cannot think that the emotional impact of seeing the defendant in custody is necessarily hostile—it may be quite the reverse." *Id.* at 17.

In *Wright v. Texas*, 533 F.2d 185 (5th Cir.1976), the Fifth Circuit held that "rational jurors would understand and follow a proper instruction that handcuffing persons in custody for transportation to and from the courtroom is a reasonable precaution that in no way reflects upon the presumption of innocence or the individual propensities of any defendant." *Id.* at 188.

In *Bibbs v. Wyrick*, 526 F.2d 226 (8th Cir.1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976), trial counsel requested that the "strongest" bailiffs be assigned to the courtroom because the defendant had a reputation for violence. *Id.* at 227. On the morning of the trial Bibbs "rose to his feet announcing in a loud voice that he was not going to trial with his present attorney and then started moving toward the bench and a courtroom exit nearby." *Id.* The bailiffs handcuffed him in front of the jury and removed him from the courtroom. Objections were made on the second day of trial and the handcuffs were removed. *Id.* The Eighth Circuit found that no prejudice was shown and observed that the removal of handcuffs on the second day, "might well have had a favorable reaction with the jury rather than an adverse one." *Id.* at 228.

In *United States v. Leach*, 429 F.2d 956 (8th Cir.1970), *cert. denied*, 402 U.S. 986,

91 S.Ct. 1675, 29 L.Ed.2d 151 (1971), the jury's brief viewing of the defendants in handcuffs was caused by the fact that the jurors and the defendants had to use the same corridor to get to the courtroom because of construction work. The Eighth Circuit commented that "[i]t is a normal and regular as well as a highly desirable and necessary practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this." *Id.* at 962. Furthermore, the procedure was "necessary to prevent an escape and possible injury to others in an escape attempt." *Id.*

Halliburton has failed to make an affirmative showing of actual prejudice. The most certain method to show that actual prejudice resulted would have been to conduct a voir dire of the two jurors who saw Halliburton in handcuffs. The Fifth Circuit has held that when there is a "brief and fortuitous" display of a defendant in handcuffs before a jury, any error is waived if the accused fails to examine the jurors who may have seen him for the purpose of excluding them from the panel. *Wright*, 533 F.2d at 187–88.

Halliburton's trial counsel declined the court's offer to question the jurors concerning the impact, if any, of their view of the defendant in handcuffs. If Halliburton's counsel had agreed to conduct a voir dire, the district court could have determined whether a mistrial was necessary or whether, after substituting all of the alternates, there were sufficient untainted jurors to provide the defendant with a fair trial.

■ We recognize that a juror's answers to the court's questions concerning the impact on his state of mind of a constitutional error are not dispositive if inherent or actual prejudice is shown by the record. *Holbrook*, 475 U.S. at 570, 106 S.Ct. at 1346. We need not determine in this matter whether Halliburton's decision not to voir dire the jurors constituted waiver of the marshals' error, because we find that the district court's immediate and appropriate curative measures eliminated the risk of actual prejudice to Halliburton's right to a fair trial.

In addition to allowing Halliburton to sit without restraint in the corridor outside the courtroom during recesses, and instructing the marshals to place themselves discreetly around Halliburton, the district court instructed the jurors as follows:

I have one or two more instructions that I want to bring to your attention.

The first is that one or more of the jurors may have seen one or more of the defendants in custody at some time during these proceedings. The fact that a defendant may be in custody does not mean that the defendant committed the offenses charged or any other offenses. Defendants are committed to custody and released from custody for a wide variety of reasons not relevant to your consideration. The fact that defendant is or is not in custody should not enter into your deliberations in any way. It may not enter into your deliberations in any way.

In following my instructions, you must follow all of them and not single out some and ignore others. They are all equally important. You must not read into these instructions or into anything that I have said or done at any time during this trial any suggestion as to what verdict you should return. That is a matter entirely up to you.

In *United States v. Acosta–Garcia,* 448 F.2d 395 (9th Cir.1971), we held that:

The mere fact that some prospective members of the jury may have seen appellants in handcuffs is not so prejudicial as to require a mistrial, ... particularly where, as here, the trial court took great pains to explain that this occurrence was to have no bearing on the jury's consideration of the merits of the case against appellants.

*Id.* at 396. (citation omitted).

In *United States v. Johnson,* 735 F.2d 1200 (9th Cir.1984), appellant sought reversal on the ground that the jury saw him surrounded by marshals after his bail had been revoked. *Id.* at 1201. We concluded that "[t]here was no prejudice, because the trial court took great pains to downplay the role of the marshals." *Id.* In the instant matter, the district court carefully explained that viewing a defendant in handcuffs had no bearing on the jury's consideration of the guilt of the accused, and appropriately minimized the impact of the marshals' transportation of Halliburton in handcuffs through the public corridors. In addition, the district court wisely took affirmative steps to make it appear to the jurors that Halliburton was no longer in custody.

Because Halliburton failed to make an affirmative showing that actual prejudice resulted from the jury's brief and inadvertent observation of him in handcuffs, and the district court immediately took appropriate steps to neutralize the impact of this incident, we are persuaded beyond a reasonable doubt that Halliburton's right to a fair trial was not impaired. There is no reasonable possibility that the marshals' error in displaying Halliburton in handcuffs to certain jurors contributed to his conviction.

## VI

Having determined that Halliburton has not demonstrated actual prejudice as the result of being observed briefly and inadvertently in handcuffs, we decline to determine whether the district court abused its discretion in terminating his release during trial. Halliburton has been convicted and sentenced to prison. The question whether he was entitled to be free from governmental restraint during his trial is now quite moot. Therefore, addressing the merits of Halliburton's contention that it was error to terminate his release would merely produce an advisory opinion.

The judgment is AFFIRMED.