988 F.2d 124
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alexander Ifeanyi IJEMBA, Defendant-Appellant.
 No. 91-50400.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 5, 1993.*
Decided March 5, 1993.
 
 Appeal from the United States District Court for the Central District of California; No. CR-90-0872-WDK-3, William D. Keller, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before CANBY, BOOCHEVER and WILLIAM A. NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Alexander Ifeanyi Ijemba was convicted of various counts relating to a conspiracy to import heroin for distribution. He appeals the convictions and sentence on various grounds. We affirm.
 
 
 3
 * Ijemba contends that the evidence was insufficient to convict him of the conspiracy charges. Since no motion for acquittal was made at the close of evidence, we review the sufficiency of evidence for plain error. United States v. Mora, 876 F.2d 76, 77 (9th Cir.1989). Here, there was no plain error. The government presented an abundance of evidence linking Ijemba to a conspiracy to import heroin.
 
 II
 
 4
 At trial, the prosecution presented expert testimony on the typical structure and modus operandi of Nigerian heroin trafficking organizations. Ijemba claims that this testimony showed racial bias on the part of the prosecution because it consisted of "systematic racial (discriminatory) references." [Blue at 28.]
 
 
 5
 An examination of this testimony reveals no racial bias. [Appellee's ER at 23-26; RT at 787-90.] The expert testimony consists of a simple, unbiased account of the practices of drug-trafficking conspiracies operating out of Nigeria.
 
 III
 
 6
 Ijemba claims that certain evidence used in obtaining the search warrant, the indictment, and the conviction was "perjured." Specifically, he claims that a phone conversation he had with co-conspirator Arum, conducted in Ibo, a Nigerian language, was mistranslated by the government. Ijemba says that the government translated his words as "What stuff?" and "What's going on?" when he really said "Come and get what?" [Blue at 19.] We do not believe that the government's translation differs materially from Ijemba's. Thus, Ijemba's claim of perjury fails.
 
 IV
 
 7
 Ijemba claims that the district court erred in its instructions to the jury. Since Ijemba did not object to the jury instructions at trial, we review the jury instructions only for plain error. United States v. Boone, 951 F.2d 1526, 1541 (9th Cir.1991). Ijemba says that there were no instructions given regarding the following issues: (1) witness and accomplice liability; (2) aiding and abetting; (3) multiple conspiracies; and (4) an alibi defense. However, the district court did in fact instruct the jury regarding the first three issues. [Red at 26-29.] The court did not give an instruction regarding Ijemba's alibi because no such jury instruction was proposed by him. Furthermore, Ijemba does not specify what alibi theory the court should have presented to the jury. We hold that the jury instructions were not plainly erroneous.
 
 V
 
 8
 Ijemba argues that a post-conviction investigation has "revealed that he was not a member of [the drug importation] conspiracy." [Blue at 34.] He does not specify what this new evidence is.
 
 
 9
 This claim can be raised before the district court in a Rule 33 motion for a new trial based on newly-discovered evidence. Fed.R.Civ.P.Rule 33. It cannot be raised here for the first time.
 
 VI
 
 10
 Ijemba argues that the government played only a portion of a room monitor tape of government witness Arum. He says that another portion of the tape shows that Arum was coerced into testifying against him. However, Ijemba did not seek to play any additional tape during the trial. Furthermore, he had ample opportunity to cross-examine Arum regarding his motives in testifying for the government. At trial, Ijemba did not raise the possibility that Arum was coerced, even though it seems that Ijemba had a copy of the entire tape (as is evident from the fact that he asked questions regarding statements on the tape that were not played at trial). Ijemba's assertion that Arum was coerced into testifying against him thus lacks any basis in the record.
 
 VII
 
 11
 Ijemba argues that the government introduced Ijemba's business records at trial without any warning. He contends that this introduction violated Brady v. Maryland, 373 U.S. 83 (1963). The government used the bank records to establish that the business was being used to launder money. Thus, the records were inculpatory, not exculpatory, and the government was under no Brady obligation to reveal them to the defense before introducing them at trial.
 
 
 12
 Ijemba also argues that the introduction of the bank records also violated Rule 16(a)(1)(C). Fed.R.Crim.P.Rule. 16(a)(1)(C). However, this rule requires disclosure of documentary evidence by the government only when the defense requests it. Ijemba does not claim that he requested these documents.
 
 VIII
 
 13
 Ijemba says he was denied effective assistance of counsel. He asserts that his counsel: (1) did not file any motion to suppress any tainted evidence or perjured testimony; (2) did not seek jury instructions regarding credibility, coercion, accomplices, and alibi defenses; (3) did not object to obvious prosecutorial abuse; (4) fell asleep; (5) prevented Ijemba from obtaining a mistrial after the jury saw him in handcuffs during a recess; and (6) denied Ijemba the right to testify on his own behalf. Each of these claims of ineffective assistance either lacks legal merit or factual support in the record.
 
 
 14
 Whether a defendant received ineffective assistance of counsel is a legal question reviewed de novo. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991). A defendant must show: (1) that counsel's actions were "outside the wide range of professionally competent assistance," and (2) that the defendant was prejudiced by reason of counsel's actions. Strickland v. Washington, 466 U.S. 668, 687-690 (1984).
 
 
 15
 First, as discussed above, the "perjured" testimony claim is insubstantial. Thus, Ijemba's counsel's failure to raise the issue was well within the scope of competent assistance.
 
 
 16
 Second, the court did in fact instruct the jury on the issues on which Ijemba now says the court did not deliver an instruction. The court did not instruct the jury on any alibi Ijemba might have had, but Ijemba does not provide any credible alibi that the court should have used.
 
 
 17
 Third, Ijemba has not presented any credible evidence of prosecutorial abuse. Thus, Ijemba's counsel's failure to raise the issue was well within the scope of competent assistance.
 
 
 18
 Fourth, Ijemba says that his attorney fell asleep during the proceedings a number of times. He cites no support in the record for this assertion. While it does seem that the attorney slept a little during the trial of Ijemba's co-conspirators, his attendance at that trial was optional. We hold here that Ijemba has not demonstrated any factual basis for his claim that his attorney slept during the proceedings. However, Ijemba may bring this claim on collateral attack under 28 U.S.C. § 2255 so that the facts can be ascertained.
 
 
 19
 Fifth, Ijemba claims that his attorney prevented him from obtaining a mistrial on the ground that the jury had seen him in handcuffs during a recess. However, the attorney withdrew the motion for a mistrial with Ijemba's consent. The district court asked Ijemba if he had any questions regarding that withdrawal, but Ijemba replied that he had none. Both the government and the defense agreed that the jury would be given a curative instruction modeled on that given in United States v. Halliburton, 870 F.2d 557 (9th Cir.), 492 U.S. 910 (1989). Since Ijemba consented to the withdrawal, his claim that his lawyer prevented him from obtaining a mistrial lacks merit.
 
 
 20
 Finally, Ijemba contends that his attorney denied him the opportunity to testify in his own defense and that his attorney did so on the advice of the prosecutor. However, Ijemba presents no evidence that the defense counsel decided not to call him as a witness on the advice of the prosecutor. Not calling Ijemba to the stand may well have been an appropriate strategic decision within the range of competent assistance. However, Ijemba may bring this claim on collateral attack under 28 U.S.C. § 2255 so that the facts can be ascertained.
 
 IX
 
 21
 We decline to address Ijemba's claim of improper prosecutorial vouching for a witness as that claim was not raised in the district court or in his opening brief on appeal. Lamb-Weston, Inc. v. McCain Foods, Ltd., 941 F.2d 970, 973 n. 2 (9th Cir.1991).
 
 X
 
 22
 Ijemba argues that the district court erred in sentencing him on the basis of his convictions for conspiracy to import and possess heroin for distribution. He says that the "conviction was illegal," and thus could not have been used for sentencing. [Blue at 33.] Since we affirm the convictions, we find no error in the district court proceeding to sentence Ijemba for those crimes.
 
 XI
 
 23
 For the foregoing reasons, Ijemba's convictions and sentence are AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3