51 F.3d 282
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Don BOGARD, aka Larry Don Bogard, Jr.; aka Michael R.
Staten, Defendant-Appellant.
 No. 94-50099.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 9, 1995.
Decided March 22, 1995.
 
 1
 Before: CANBY and NOONAN, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendant Don Bogard appeals from his conviction and sentencing following a jury trial on four counts of possession with intent to distribute, and distribution of, phencyclidine ("PCP"), in violation of 21 U.S.C. Sec. 841(a)(1). Bogard contends that the district court erred in (1) denying his motion to recuse his trial judge, (2) in denying his motion for mistrial based on some of the jurors having allegedly viewed him in the custody of U.S. marshals, and (3) in holding that two prior felony convictions were unrelated, thus warranting sentencing Bogard as a career offender. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and affirm.
 
 I.
 
 4
 Bogard was indicted on September 11, 1991 on two counts of distributing PCP and two counts of possession with intent to distribute PCP. The indictment stemmed from two alleged purchases of PCP made by undercover agents from Bogard on May 10, 1991 and August 27, 1991. He pled guilty to one count of unlawfully distributing PCP, pursuant to a written plea agreement.
 
 
 5
 Bogard later moved to withdraw his guilty plea, contending that he had not been properly advised of the sentence he might receive. The district court denied Bogard's motion and sentenced him to 210 months in prison to be followed by five years of supervised release. Bogard appealed, and this court vacated his conviction and remanded to the district court to allow Bogard to change his plea. Bogard was rearraigned and entered a plea of not guilty.
 
 
 6
 A jury found Bogard guilty on all four counts of the original indictment. The district court sentenced him as a career offender to 360 months in prison to be followed by five years of supervised release.
 
 II.
 
 7
 This court reviews a denial of a motion for recusal for abuse of discretion. Molina v. Rison, 886 F.2d 1124, 1131 (9th Cir.1989) (citing United States v. Studley, 783 F.2d 934, 939 (9th Cir.1986)).
 
 
 8
 The district court correctly concluded that Bogard's motion to recuse Judge Keller was untimely. Even assuming timeliness, however, Bogard's motion was without merit.
 
 
 9
 In Liteky v. United States, 114 S.Ct. 1147 (1994), the Supreme Court revisited the "extrajudicial source doctrine" as formulated in the oft-cited opinion by Justice Douglas in United States v. Grinnell Corp., 384 U.S. 563 (1966). Reasoning that neither the presence of an extrajudicial source establishes bias nor the absence of an extrajudicial source necessarily precludes bias, the Court held that whether the alleged bias or prejudice stems from an extrajudicial source should merely be a factor for the court to consider, albeit a significant and often determinative factor. Liteky, 114 S.Ct. at 1157.
 
 
 10
 The Court noted that one consequence of the extrajudicial source factor is that "judicial rulings alone almost never constitute valid basis for a bias or partiality motion." Id. Nor will the fact that the judge has formed an opinion of a party on the basis of what goes on in the courtroom require that judge's disqualification. Id.
 
 
 11
 Thus, although the bias or prejudice requiring a judge's recusal may conceivably stem from the judicial proceedings themselves, it will do so only in the rarest of circumstances. See also United States v. Chischilly, 30 F.3d 1144, 1149 (9th Cir.1994). The Court specifically noted what circumstances would not require recusal:
 
 
 12
 Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune.
 
 
 13
 Liteky, 114 S.Ct. at 1157.
 
 
 14
 The statements by Judge Keller cited by Bogard in his brief were mostly made during the March 12, 1992 hearing on Bogard's motion to withdraw his guilty plea. Most of them indicate Judge Keller's skepticism as to Bogard's contention that he did not understand what the consequences might be of his original guilty plea.
 
 
 15
 Bogard does not dispute that any opinions Judge Keller may have expressed were formed on the basis of facts introduced or events occurring in the course of the proceedings in his courtroom. Thus, under Liteky, Judge Keller's statements would warrant his recusal only if they evinced a favoritism or antagonism so extreme as "would make fair judgment impossible." Liteky, 114 S.Ct. at 1157. They do not. As the Liteky Court noted, remarks by a judge that are critical or disapproving of, or even hostile to, the parties or their counsel will not ordinarily support a recusal motion. Nor do Judge Keller's "expressions of impatience, dissatisfaction, annoyance, and even anger" toward Bogard necessarily establish the requisite bias or prejudice that would warrant recusal.
 
 
 16
 The district court did not err in denying Bogard's motion for recusal.
 
 III.
 
 17
 Whether a defendant's right to a fair trial is violated because members of the jury observe him in handcuffs is a question of law that is reviewed independently without deference to the district court's determination of the issue. United States v. Halliburton, 870 F.2d 557, 558 (9th Cir.1989), cert. denied, 492 U.S. 910 (1989). If the court determines that a constitutional error occurred, it must decide whether such error was harmless beyond a reasonable doubt. Id.
 
 
 18
 Unless the record reveals that knowledge by certain jurors that Bogard was under restraint or custody during his trial was so inherently prejudicial that he was denied his constitutional right to a fair trial, the burden falls to Bogard to affirmatively show actual prejudice. See United States v. Arias-Villanueva, 998 F.2d 1491, 1505 (9th Cir.1993), cert. denied, 114 S.Ct. 359 (1993); United States v. Halliburton, 870 F.2d 557, 560 (9th Cir.1989). This court has held that "a jury's brief inadvertent observation of a defendant in custody does not compel reversal in the absence of an affirmative showing of actual prejudice." Arias-Villanueva, 998 F.2d at 1505-06 (quoting Halliburton, 870 F.2d at 561).
 
 
 19
 Bogard contends that although the first viewing of him in the custody of the marshals may have been "inadvertent," "brief," or "accidental," the subsequent viewings on the second day of trial, occurring after the marshals were already on notice of the dangers inherent in permitting such incidents, were not.
 
 
 20
 In fact, however, there is nothing in the record to indicate that the incidents were anything but brief and inadvertent. Nor is there anything to indicate that the judge or the prosecution was in any way responsible for the viewing, or that the marshals intentionally "paraded" a shackled Bogard in front of the jury, as he alleges. The viewings complained of by Bogard were thus not "inherently prejudicial" within the meaning of Halliburton and Arias-Villanueva.
 
 
 21
 Because the incidents complained of by Bogard were not inherently prejudicial, he must establish actual prejudice to support his contention of error by the trial court. Bogard has not made such a showing. The trial court questioned the only two jurors who might have viewed Bogard while he was handcuffed, and only one, an alternate, indicated he was even aware that Bogard was in custody. Both jurors, when asked, said they would have no problem being fair and impartial in their deliberations. Moreover, the court took pains to explain to the jurors involved that they were not to consider the defendant's custodial status in their deliberations.
 
 
 22
 In light of the curative measures taken by the trial court and the absence of any evidence of actual prejudice, the court below properly denied Bogard's motions for mistrial.
 
 IV.
 
 23
 Whether two prior offenses are related under U.S.S.G. Sec. 4A1.2(a)(2) is a mixed question of law and fact subject to de novo review. United States v. Taylor, 984 F.2d 298, 300 (9th Cir.1993). This court reviews for clear error any findings of fact that underlie the district court's sentencing decision. Id.
 
 
 24
 The trial court sentenced Bogard as a career offender pursuant to Sec. 4B1.1 of the Sentencing Guidelines, concluding that he had at least two prior felony convictions of either a crime of violence or a controlled substance offense. Bogard contends that the two convictions relied on by the district court--one in federal court for a bank robbery on June 17, 1980 in Gardena, California and the other for a carjacking and a pair of gas station robberies on August 18, 1980 in Los Angeles--were "related" and thus should not be counted separately in determining whether he is a career criminal.
 
 
 25
 Section 4B1.1 provides that a defendant who is being sentenced for a crime of violence or a controlled substance offense and who has at least two prior felony convictions for a crime of violence or a controlled substance offense is a career offender subject to an enhanced sentence. To qualify as the basis for a career offender determination, however, the two prior felony convictions must be counted separately under the provisions of U.S.S.G. Sec. 4A1.1(a), (b), or (c). Whether two offenses are counted separately depends, in turn, on whether they are "related cases" within the meaning of Application Note 3 to U.S.S.G. Sec. 4A1.2(a)(2).
 
 
 26
 Application Note 3 provides that to be related, the offenses must have (1) occurred on the same occasion; (2) been part of a common scheme or plan; or (3) been consolidated for trial or sentencing. As it is undisputed that the offenses at issue here did not occur on the same occasion, the first factor is not applicable here. Rather, Bogard contends the offenses were part of a common scheme or plan and that the cases--one in federal court and the other in state court--were, in effect, consolidated for sentencing.
 
 
 27
 As this court has noted in the past, the words "common scheme or plan" connote that the subject offenses must have been " 'jointly planned, or at least that the commission of one would entail the commission of the other as well.' " United States v. Chapnick, 963 F.2d 224, 227 n. 5 (quoting United States v. Ali, 951 F.2d 827, 827 (7th Cir.1992)). As the commentary to the Sentencing Guidelines notes, "[f]or two or more offenses to be part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. Sec. 1B1.3 cmt. 9.
 
 
 28
 Bogard's state and federal convictions cannot be rationally said to have resulted from conduct that was part of a "common scheme or plan." The two convictions stemmed from unrelated robberies committed two months apart at different locations and involving different victims and different modus operandi. They were not "substantially connected" to each other. Moreover, there is no evidence that the crimes were jointly planned or that the commission of one entailed the commission of the other. Accordingly, Bogard cannot rely on "a common scheme or plan" to establish that the offenses were related.
 
 
 29
 Bogard also contends that because the state court agreed that his sentence for the carjacking and gas station robberies should run concurrently with his federal sentence for bank robbery, and because the federal court later adjusted its sentence to conform with the state sentence, that the two offenses were, in effect, consolidated for sentencing within the meaning of Application Note 3.
 
 
 30
 Prior offenses may be treated as consolidated for sentencing even in the absence of a formal consolidation order. Chapnick, 963 F.2d at 228-29. However, the fact of concurrent sentences, standing alone, does not render separate cases consolidated for purposes of sentencing. United States v. Davis, 922 F.2d 1385, 1390 (9th Cir.1991). Although Bogard contends the record supports a finding that his state and federal offenses were consolidated for sentencing, there is nothing in the record to support such a finding. There is no indication in the record that the district court in the bank robbery case ordered the concurrent sentence because it considered the state and federal offenses to be related. In the absence of such an indication, the mere fact that the federal sentence was made to run concurrent with that imposed by the state court does not establish that the offenses were consolidated for sentencing.
 
 V.
 
 31
 We AFFIRM the judgment of the district court.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3