91 F.3d 156
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas R. FARRUGIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald KAPPERMAN, Defendant-Appellant.
 No. 94-10562, 95-10131.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 8, 1996.
Decided July 17, 1996.
 
 Before: WOOD,* CANBY, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Thomas R. Farrugia and Donald Kapperman appeal their convictions for conspiracy to manufacture a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), and possession of a listed chemical with intent to manufacture a controlled substance, and aiding and abetting, in violation of 21 U.S.C. § 841(d)(1) and 18 U.S.C. § 2. We have jurisdiction, 28 U.S.C. § 1291, and affirm both convictions.
 
 
 3
 * Farrugia argues that the district court erred in refusing to allow him to represent himself because his February 2 letter and his February 14 motion constituted an "ongoing unequivocal request to proceed pro se." We disagree.
 
 
 4
 A criminal defendant's assertion of his right to self-representation must be unequivocal. United States v. Robinson, 913 F.2d 712, 714 (9th Cir.1990), cert. denied, 498 U.S. 1104 (1991); Adams v. Carroll, 875 F.2d 1441, 1442 (9th Cir.1989). Courts must indulge in every reasonable presumption against waiver of the right to counsel; thus, "[i]f [the defendant] equivocates, he is presumed to have requested the assistance of counsel." Adams, 875 F.2d at 1444.
 
 
 5
 During the January 4, 1994 hearing the district judge asked Farrugia if he was "abandoning" his position as the appointed attorney, asked Farrugia if he wanted Nix to "take over" as appointed counsel, and explained the ramifications of such a decision. Farrugia responded unequivocally: "Okay. Assign Mr. Nix as counsel."
 
 
 6
 Having opted to proceed with appointed counsel and relinquish his pro se status, neither his February 2 letter seeking discovery, his February 14 motion for a continuance, nor Farrugia's off-hand remarks that he was "Black-mailed into waiving his pro per status," and acted "only under threat of being denied due process in being allowed to file & have all of his Motions heard," amounts to an unequivocal assertion of his right to self-representation. None sought self-representation. Compare Adams, 875 F.2d at 1444-45 (defendant "made his preference clear from the start," took "one consistent position" and "stuck to it," and throughout the pre-trial period, "repeatedly indicated his desire to represent himself"); United States v. Arlt, 41 F.3d 516, 519 (9th Cir.1994) (defendant explained intentions to proceed pro se to his attorney; throughout the proceedings he "persisted in seeking the right to represent himself"; and even after the judge denied his motion and appointed counsel, he "repeated his request by noting that he was demanding the right"); Armant v. Marquez, 772 F.2d 552, 555 (9th Cir.1985) (defendant "fill[ed] out a form and unambiguously t[old] the court that he was aware of what he was doing"), cert. denied, 475 U.S. 1099 (1986). See also Jackson v. Ylst, 921 F.2d 882, 888-89 (9th Cir.1990) (holding that a request for self-representation may "properly [be] den[ied if] it is 'a momentary caprice or the result of thinking out loud' "; therefore, a request for self-representation will be deemed equivocal where it is an "impulsive response to the trial court's [rulings]," particularly where the defendant did not subsequently object to the presence of appointed counsel or renew his request to proceed pro se).
 
 II
 
 7
 Farrugia argues that the district court erred in denying Kapperman's motion to suppress evidence seized from the Lancaster residence because the warrantless search of the residence was not justified by exigent circumstances. We disagree.
 
 
 8
 Even assuming that the initial warrantless entry was illegal, where evidence is obtained pursuant to an independently obtained search warrant, courts need not suppress the evidence that was obtained at the time of the prior illegal entry or the evidence that was subsequently discovered when executing the search warrant. Murray v. United States, 487 U.S. 533, 535, 101 L.Ed.2d 472, 479 (1988); United States v. Reed, 15 F.3d 928, 933-34 (9th Cir.1994); United States v. Salas, 879 F.2d 530, 536-37 (9th Cir.), cert. denied, 493 U.S. 979 (1989); United States v. Driver, 776 F.2d 807, 811-12 (9th Cir.1985).
 
 
 9
 Here, there is no indication that the officers' decision to seek the warrant was prompted by what was found during the initial entry. Salas, 879 F.2d at 537. Moreover, as the district court concluded, had references to the items found during the initial entry been excised from the affidavit, the remaining untainted portions (including Kapperman's and Morgan's participation in the ephedrine purchase; Morgan's statement that Kapperman lived with the "cooker," that "his guys cook about two to three hundred miles" from Fresno, and that Kapperman had taken half of the ephedrine; surveillance of Kapperman driving the same car used in the ephedrine purchase to Lancaster; and Kapperman's arrest after leaving the Lancaster residence without the ephedrine) were sufficient to provide probable cause to search the premises. Reed, 15 F.3d at 934; see also United States v. Rodriguez, 869 F.2d 479, 484-85 (9th Cir.1989) (probable cause existed to search residence where defendants drove to residence with boxes believed to contain cocaine and drove away without boxes, creating "a substantial basis to conclude that the boxes had been left at [the] residence").
 
 III
 
 10
 Farrugia further argues that he made a "substantial showing" that Rien's characterization of the laboratory as a "sophisticated methamphetamine laboratory" was false and material, such that he should have had a Franks hearing on the Oakley search. We cannot say that the district court clearly erred in finding that Farrugia failed to show that Rien acted intentionally or recklessly. United States v. Burnes, 816 F.2d 1354, 1357 (9th Cir.1987) (applying the rules of Franks v. Delaware, 438 U.S. 154 (1978), and holding that "where a substantial preliminary showing is made, the court must hold a hearing to determine if any false statements deliberately or recklessly included in the affidavit were material to the magistrate's finding of probable cause"). Rein relied on a lab report of an expert state criminalist indicating that the chemicals found in Lancaster were consistent with those used to manufacture methamphetamine, and on the search which turned up half of the 55 pounds of ephedrine which had been sold undercover to Morgan and Kapperman for the purpose of manufacturing methamphetamine. In any event, there was ample evidence in the affidavit linking Farrugia to the conspiracy for probable cause: undercover agents sold 55 pounds of ephedrine to Morgan and Kapperman specifically for the purpose of manufacturing methamphetamine; Morgan told Rien that Kapperman lived with the "cooker"; Annette Dowling stated that Kapperman's cellmate (referred to as "Tom Kelly," apparently a fictitious name for Farrugia) lived in the outbuilding where the methamphetamine materials were located; a search of the Lancaster residence revealed identification for Kelly indicating that he resided at 1455 Canta Way (apparently a misspelling of Chianti Way) in Oakley; the car Morgan and Kapperman transported the ephedrine in was registered to Kelly at an address near Oakley; a phone list confiscated from Kapperman's wallet had an entry for "Kel," which was linked to a residence at 1455 Chianti Way in Oakley; and the car Morgan and Kapperman had transported the ephedrine in was observed in front of 1455 Chianti Way.
 
 IV
 
 11
 Farrugia argues that the 1980 acts were too remote and there was insufficient evidence to establish that they, and the 1985 acts, were similar to the charged offense to be admitted under Fed.R.Evid. 408(b).
 
 
 12
 Evidence of Farrugia's 1980 conviction for attempted methamphetamine manufacturing was not too remote. United States v. Spillone, 879 F.2d 514, 519 (9th Cir.1989) (holding that, "[g]iven the fairly close similarity of the offenses," a 17-year-old prior conviction for extortionate extension of credit was not too remote from charged offense of using extortionate means to collect extensions of credit), cert. denied, 498 U.S. 864 (1990); United States v. Ono, 918 F.2d 1462, 1465 n. 2 (9th Cir.1990) (holding that, "considering the degree of similarity," the 7-year-old prior conviction for possession of heroin with intent to distribute was not too remote from charged offense of conspiracy to manufacture and procure heroin); United States v. Manning, 56 F.3d 1188, 1197 (9th Cir.1995) (holding that 8-year-old prior conviction was not too remote). Nor was the 1980 conviction for attempted manufacture of methamphetamine too dissimilar from the charged offense for conspiracy to manufacture methamphetamine. Both involve similar narcotics and an intent to manufacture methamphetamine. See Spillone, 879 F.2d at 519-20 (holding that prior conviction for extortionate extension of credit was sufficiently similar to charged offense of using extortionate means to collect extensions of credit or "loan sharking"); Ono, 918 F.2d at 1465 (holding that prior conviction for possession of nonsynthetic heroin with intent to distribute was sufficiently similar to charged offense of conspiracy to manufacture and procure synthetic heroin). That only the judgment and conviction were admitted into evidence does not, as Farrugia contends, require a different result. Spillone, 879 F.2d at 819 (upholding admissibility of prosecutor's testimony that defendant was convicted of extortionate extension of credit). In any event, Farrugia neither sought to introduce the underlying facts of the conviction, nor objected to the district court's refusal to admit the plea bargain colloquy. United States v. McQuisten, 795 F.2d 858, 865 (9th Cir.1986).
 
 
 13
 Likewise, evidence of the 1985 acts was not too dissimilar, as Farrugia was convicted of conspiracy to possess methamphetamine. Ono, 918 F.2d at 1465 (possession sufficiently similar to manufacturing). Agent Lundsford testified that Farrugia had visited a chemical and laboratory equipment shop and transported tubing, boxes containing glassware, and ether. United States v. Basinger, 60 F.3d 1400, 1408 (9th Cir.1995) (evidence of prior seizure of chemicals is admissible to establish defendant's intent to manufacture methamphetamine); United States v. Corona, 34 F.3d 876, 881 (9th Cir.1994) (evidence of later possession of list of drug customers is admissible to establish knowledge and intent to conspire to possess and distribute cocaine).
 
 
 14
 Both prior acts are probative of Farrugia's knowledge and intent and were therefore relevant under Rule 403; evidence having to do with his 1980 and 1985 activity was not cumulative; and any danger of unfair prejudice was mitigated by the contemporaneous limiting instructions.
 
 V
 
 15
 Farrugia also argues that the district court's Fed.R.Evid. 404(b) limiting instruction improperly permitted the jury to consider his 1980 conviction to establish identity. While the court obviously misspoke once, since identity was not at issue, it could not have had any affect on the trial. The court correctly instructed at other times that consideration of the 404(b) evidence was limited to intent or knowledge.
 
 VI
 
 16
 Farrugia further contends that the prosecutor, in his rebuttal argument, misstated Fickie's testimony about the manufacturing capability of the laboratory, which in turn materially affected the verdict.
 
 
 17
 "[I]mproprieties in counsel's arguments to the jury do not constitute reversible error unless they prejudice the defendant and that prejudice has not been remedied by the trial judge." United States v. Lopez-Alvarez, 970 F.2d 583, 597 (9th Cir.) (citation omitted), cert. denied, 506 U.S. 989 (1992). In the prosecutor's rebuttal argument, he stated that "the testimony I recall was not that the methamphetamine could not be made with the chemicals there, what I recall the testimony being is that a low yield of methamphetamine could be made." While this does misstate what Fickie actually said--that a low yield could be made if he also had iodine--the jury was promptly told that "it's not for Mr. Rooney to authoritatively say what the evidence is." In addition to this curative instruction, the court's routine instructions made it clear that closing arguments are not evidence and that the jury's recollection controls. Thus, any prejudice was remedied. Id. at 598 (holding that any prejudice was remedied when the trial judge instructed the jury that the attorney's statements did not constitute evidence); United States v. Carrillo, 16 F.3d 1046, 1050-51 (9th Cir.1995) (same), aff'd in part, rev'd in part, United States v. Corona, 34 F.3d 876 (9th Cir.1994).
 
 VII
 
 18
 Farrugia argues that there was insufficient evidence to convict him of possession and aiding and abetting the possession of ephedrine with the intent to manufacture methamphetamine. However, a rational trier of fact could conclude that Farrugia constructively or actually possessed the ephedrine with intent to manufacture methamphetamine based on evidence that when Morgan purchased the ephedrine from the government agents, he told them that Kapperman lived with the "cooker," and Kapperman's girlfriend, Annette Dowling, stated that Farrugia lived with Kapperman. Kapperman transported half of the ephedrine to his Lancaster home. Farrugia rented the outbuilding at the Lancaster residence in which the ephedrine was discovered, and he constructed the laboratory in it. He also placed a padlock on the door. Farrugia was present during the Lancaster search but hid. Glassware and methamphetamine-related documents seized from the outbuilding bore Farrugia's fingerprints and/or signature.
 
 VIII
 
 19
 Farrugia further argues that the cumulative effect of the trial errors is so prejudicial as to require reversal, but the cumulative effect of the only arguable errors that occurred (one of several 404(b) instructions permitted the jury to consider the 1980 conviction as evidence of identity, and the government's misstatement of Fickie's testimony) is not so prejudicial as to require reversal. United States v. Wallace, 848 F.2d 1464, 1475 (9th Cir.1988). Curative instructions were given in each case.
 
 IX
 
 20
 Kapperman argues that Sandstrom[1] error occurred when the district court said in its oral instructions that "the evidence will show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping another person commit the crime of possession of a listed chemical,...." (rather than correctly reading the written instruction which said that "the evidence must show beyond a reasonable doubt ..."), and that the court also erred in telling the jury "you will have to determine whether or not there was sufficient probable cause to determine that there was a clandestine laboratory." He contends that the former instruction effectively directed a verdict and the latter misstated the standard of proof, requiring reversal.
 
 
 21
 We disagree. Kapperman failed to object to either instruction; accordingly, we review for plain error. United States v. Ancheta, 38 F.3d 1114, 1116 (9th Cir.1994).
 
 
 22
 The "probable cause" instruction was a limiting instruction given during testimony about the search. While it may imply that the jury will have to decide if there was "probable cause" to believe there was a clandestine laboratory instead of to find it beyond a "reasonable doubt," the statement came in the middle of the trial and doesn't readily relate to any issue actually before the jury. The instructions as a whole were not plainly erroneous, and the closing instructions clearly instructed that the government had the burden of proving each element of the crimes beyond a reasonable doubt.
 
 
 23
 The "aiding and abetting" instruction as orally delivered is obviously wrong, but both the remaining oral instructions, and the written instructions which were also furnished to the jury, repeatedly and clearly admonished that the jury was the finder of fact, that the jury must find each element beyond a reasonable doubt, and that the government has the burden of proving each element. Moreover, immediately before the offending aiding and abetting instruction, the court specifically instructed the jury that the government had the burden of proving each of the identified elements of aiding and abetting, and that "[y]ou must unanimously agree on at least one person that the defendant so aided ..." Insofar as the district court's erroneous instruction can be construed as its own comment on the evidence, the instructions also clearly indicated that the jury must not draw any inference from anything the court said about what the verdict should be.
 
 
 24
 The court also provided the jury with written instructions that properly stated that the evidence "must" show "beyond a reasonable doubt that the defendant acted with knowledge and intention ..." Defense counsel in closing argument specifically directed the jury to rely on the written jury instructions. We conclude that no plain error occurred. See Ancheta, 38 F.3d at 1116-17 (holding that no plain error occurred where court erroneously instructed that the "defendant must prove each of the following elements beyond a reasonable doubt," rather than the government); United States v. Brown, 522 F.2d 10, 11-12 (9th Cir.1975) (holding that no plain error occurred where court erroneously instructed that if jury "find[s] that the law has been violated as charged, you shouldn't hesitate to return a verdict of guilty," without inserting reasonable doubt standard); United States v. Gold, 743 F.2d 800, 821-22 (11th Cir.1984) (holding that error was harmless where court erroneously instructed that "[i]t is not necessary that you find beyond a reasonable doubt that any act ... was done or committed knowingly," where "not" improperly shifted burden of proof to defendant), cert. denied, 469 U.S. 1217 (1985).
 
 X
 
 25
 Kapperman further argues that the district court improperly gave a supplemental written instruction without reading it aloud in open court in his presence and without prior notice to or agreement by his counsel. He claims that he was prejudiced because telling the jury not to consider the fact that Kapperman was escorted from the courtroom by the marshals highlighted the fact that he was escorted.
 
 
 26
 We disagree. A major reason we disapprove of submitting a written instruction to the jury, without reading it orally in open court, is that there is no way to ensure that every member of the jury read the instruction. See People of the Territory of Guam v. Marquez, 963 F.2d 1311, 1314-16 (9th Cir.1992). In the present case, however, the instruction was intended to cure any prejudice resulting from the district judge's comment that marshals could escort Kapperman from the courtroom. Kapperman has not shown that this single comment tending to indicate that he was in custody was sufficient to prejudice him. See United States v. Rushton, 963 F.2d 272 (9th Cir.1992). A curative instruction was not required in the absence of a demand for one. Wilson v. McCarthy, 770 F.2d 1482 (9th Cir.1985). As a consequence, any possible failure of jurors to read the curative instruction was harmless.
 
 
 27
 With regard to the complaint that counsel had no opportunity to object, we also find no prejudice. Even if the district court erred in sending the supplemental written instruction to the jury without notice to defense counsel and an opportunity to object, see Rogers v. United States, 422 U.S. 35, 39, 45 L.Ed.2d 1 (1975), reversal is not required where the error was harmless, United States v. Kupau, 781 F.2d 740, 744 (9th Cir.) (applying harmless error test), cert. denied, 479 U.S. 823 (1986); Ah Fook Chang v. United States, 91 F.2d 805, 810 (9th Cir.1937) (same). We have held that such errors are prejudicial where the instruction was an erroneous statement of law, Gagliardo v. United States, 366 F.2d 720, 724 (9th Cir.1966), or where it is impossible to ascertain the contents of the court's communication with the jury, Ah Fook, 91 F.2d at 810. By contrast, we have held that such errors are harmless where the court's communication is part of the record and does not involve a misstatement of the law. See, e.g., Kupau, 781 F.2d at 744 (holding that court's giving jury a dictionary was harmless error); United States v. Birges, 723 F.2d 666, 670-71 (9th Cir.) (same), cert. denied, 466 U.S. 943 (1984).
 
 
 28
 The supplemental written instruction given here is part of the record, and it did not involve an erroneous substantive statement of law. It was a curative instruction designed to aid Kapperman. We have routinely upheld this type of curative instruction. United States v. Milner, 962 F.2d 908 (9th Cir.), cert. denied, 506 U.S. 1004 (1992); United States v. Halliburton, 870 F.2d 557 (9th Cir.), cert. denied, 492 U.S. 910 (1989). Although Kapperman contends that he was prejudiced, he doesn't suggest how. See United States v. Rushton, 963 F.2d 272 (9th Cir.1992); Wilson v. McCarthy, 770 F.2d 1482 (9th Cir.1985). Accordingly, the error was harmless.
 
 XI
 
 29
 Kapperman argues that the district court improperly informed the jury that there had been an adverse verdict in Farrugia's prior trial and allowed the government to impeach Farrugia by referring to Farrugia's prior conviction. We doubt that the court's comment that "another jury concluded a certain thing" actually communicated that an adverse verdict had been rendered. In any event, the district judge promptly issued a curative instruction, admonishing the jury not to consider the fact that there had been a prior trial in the case. Likewise, when the court allowed the government to impeach Farrugia with his prior convictions for the same offense alleged at trial, it limited consideration of the conviction to impeachment of Farrugia. In both respects the court acted within its discretion. United States v. Perkins, 937 F.2d 1397, 1406 (9th Cir.1991).
 
 XII
 
 30
 Kapperman argues that the district court erred in denying his motion to suppress evidence seized from the Lancaster residence. We reject this argument for the same reasons we rejected Farrugia's similar argument in Section II.
 
 XIII
 
 31
 Kapperman argues that the evidence was insufficient to support a conviction on both counts because it failed to establish the existence of an agreement and failed to establish that Kapperman intended to manufacture methamphetamine. We are not persuaded, given evidence that when Morgan purchased the ephedrine from the government agents, he told them that Kapperman lived with the "cooker," and Kapperman's girlfriend, Annette Dowling, stated that Farrugia lived with Kapperman. Morgan informed agents that his "partner" had left with half of the ephedrine, and Kapperman transported half of the ephedrine to his Lancaster home. Farrugia rented the outbuilding at Kapperman's Lancaster residence in which the ephedrine was discovered, and he constructed the laboratory in it. Methamphetamine-related documents seized from both the outbuilding and the residence bore Kapperman's fingerprints or signature. With this evidence viewed in the light most favorable to the government, sufficient evidence supported Kapperman's conviction of both the conspiracy count and the possession count. See United States v. Crespo de Llano, 838 F.2d 1006, 1019 (9th Cir.1987) (Pinkerton theory of liability provides a separate and sufficient basis for upholding conviction).
 
 XIV
 
 32
 Kapperman argues that the cumulative effect of the errors is so prejudicial as to require reversal. We cannot agree. The trial judge's erroneous instruction that the evidence "will" not "must" establish the elements was given in the context of ample proper oral and written instructions. The reference to "probable cause" during a witness's examination about a search could not reasonably be taken as substituting "probable cause" for "reasonable doubt," and in any event the jury was repeatedly instructed on the government's burden. The judge's written instruction regarding Kapperman's escort was curative in nature, and no prejudice appears. The cumulative effect of these errors is not so prejudicial as to require reversal. Wallace, 848 F.2d at 1475. The government's case against Kapperman was strong and adequately linked Kapperman, Farrugia and Morgan, the Lancaster laboratory, and the ephedrine sold by government agents.
 
 
 33
 AFFIRMED.
 
 
 
 *
 The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Sandstrom v. Montana, 442 U.S. 510 (1979)